USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/15/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X
UNITED STATES OF AMERICA                     :
                                             :
        -against-                            :           21-CR-603 (VEC)
                                             :
WILLIAM WASHINGTON,                          :           OPINION AND ORDER
WILLIAM BYNUM, and RONALD GLEN               :
DAVIS,                                       :
                                             :
                              Defendants.    X
-------------------------------------------------------- 

VALERIE CAPRONI, United States District Judge:

In advance of the trial in this matter currently scheduled for November 6, 2023, the

parties have submitted pretrial motions and motions *in limine*.  Order, Dkt. 1026.  For the reasons

stated below, the Defendants' motions *in limine* are DENIED, the Government's motions *in*

*limine* are GRANTED in part and held in abeyance in part, and the Defendants' pretrial motions

are GRANTED in part and DENIED in part.

## BACKGROUND

The Court assumes the parties' familiarity with the procedural and factual background of

this matter, which was detailed extensively in the Court's opinion denying several pretrial

motions previously filed in this matter.  Op., Dkt. 726.  As relevant to this opinion, Ronald Glen

"Big Baby" Davis and William Bynum ("Player Defendants"), who formerly played basketball

in the National Basketball Association ("NBA"), are accused of submitting fraudulent invoices

for medical services to the NBA's Health and Welfare Benefit Plan ("the Plan").  *See id*. at 2; *see*

*also* Superseding Indictment (S9), Dkt. 927 ¶¶ 1, 29.  William Washington, a physician, is

accused of providing several NBA players, including the Defendants' alleged co-conspirator

Terrence Williams, invoices for medical services not actually rendered.  *See* Op. at 2; S9 ¶ 3.

1

The Superseding Indictment (S9) charges all three Defendants with conspiring to commit health care fraud and wire fraud, conspiring to make false statements related to health care matters, and also charges Dr. Washington and Mr. Davis with health care fraud and wire fraud.  S9 ¶¶ 68, 73, 76, 78, 80, 82.

## DISCUSSION

### I.  Dr. Caccappolo's Testimony Is Excluded

Mr. Davis seeks to introduce testimony from Dr. Caccappolo, a neuropsychologist at Columbia University Irving Medical Center, who reported that Mr. Davis has .  Shroff Decl. Ex. 3 ("Caccappolo Rep."), Dkt. 926 at 6.  Dr. Caccappolo based that conclusion on the results of several tests that were designed "to assess his current level of intellectual functioning," as well as an interview to assess "past and present level of emotional and daily functioning."  *Id*. at 1. Dr. Caccappolo also based her findings on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *See id*. at 1–3.  Although Dr. Caccappolo was unable to determine the cause of Mr. Davis's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *See id*. at 6.

Based on her assessment of Mr. Davis, Dr. Caccappolo concluded that Mr. Davis ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *Id*. at 7.  In particular, she found that because Mr. Davis ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



*Id.* Finally,

she observed that Mr. Davis was ███████████████████████. *Id.*

### A. Legal Standard

The Insanity Defense Reform Act of 1984 ("IDRA") limits the availability of mental

insanity or incapacity as a defense to a criminal charge:

> It is an affirmative defense to a prosecution under any Federal
> statute that, at the time of the commission of the acts constituting
> the offense, the defendant, as a result of severe mental disease or
> defect, was unable to appreciate the nature and quality or the
> wrongfulness of his acts.  Mental disease or defect does not
> otherwise constitute a defense.

18 U.S.C. § 17(a).  Congress intended IDRA to prevent defendants from, *inter alia*, offering

"affirmative defenses such as 'diminished capacity,' 'diminished responsibility,' [and]

mitigation," as well as "the use of expert psychological testimony on ultimate legal issues . . . ."

*United States v. Jones* No. 16-CR-0553, 2018 WL 1115778, at *4 (S.D.N.Y. Feb. 27, 2018)

(Nathan, J.).  IDRA does not, however, "preclude a defendant from submitting evidence of

mental health for the purpose of negating the intent element of a crime."  *United States v. Dupre*,

462 F.3d 131, 137 n.8 (2d Cir. 2006).

Even if the proffered testimony is relevant to the defendant's *mens rea*, expert testimony

may not be used to shoehorn into evidence the types of arguments precluded by IDRA.  *See*

*United States v. Wescott*, 83 F.3d 1354, 1358 (11th Cir. 1996) (noting that IDRA only permits

"evidence that the defendant actually lacked *mens rea*," not that he "lacks the capacity to form

*mens rea*"); *United States v. Dupre*, 339 F. Supp. 2d 534, 538 (S.D.N.Y. 2004), *aff'd*, 462 F.3d

---

[1]     Nowhere in the report does Dr. Caccappolo state or imply ███████████████.  The report does note
that he graduated from high school.  *See* Caccappolo Rep., Dkt. 926 at 2.

131 (2d Cir. 2006) (noting that IDRA was enacted to preclude defenses including "diminished capacity") (citation omitted).  Accordingly, expert testimony must be limited to discussion of a defendant's diagnosis at the time of the commission of the crime, without directly opining on the ultimate issue of the defendant's formation of *mens rea*.  *See United States v. Childress*, 58 F.3d 693, 728 (D.C. Cir. 1995) (collecting cases); *Dupre*, 339 F. Supp. 2d at 541.

Finally, if expert testimony is admissible under IDRA, a court must also determine whether the testimony is otherwise admissible under the Federal Rules of Evidence, and consider, *inter alia*, the risk of jury confusion — a concern that is especially acute when dealing with expert testimony concerning mental capacity.  *See Dupre*, 339 F. Supp. 2d at 540 (citing Fed. R. Evid. 403) (noting that expert testimony offered to negate *mens rea* poses "special concerns for relevance and potential jury confusion") .

### B.        IDRA Precludes the Admission of Dr. Caccappolo's Testimony

Because the Indictment charges Mr. Davis with several specific intent crimes, IDRA does not preclude the admission of evidence that is relevant to whether he has a mental disease or defect that negates the required *mens rea*.  In this case, all of the crimes with which Mr. Davis is charged require proof of specific intent.  *See Dupre*, 339 F. Supp. 2d at 539 ("An essential element of [wire fraud] is intent to defraud."); *id.* at 540 (noting that conspiracy requires specific intent to further the illegal aim of the conspiracy); *United States v. Sachakov*, 812 F. Supp. 2d 198, 213 (E.D.N.Y 2011) ("[T]he health care fraud statute requires specific intent to defraud or misrepresent."  *Id.* (internal quotation omitted).).  The Court nevertheless finds that Dr. Caccappolo's testimony is precluded by IDRA.

Dr. Caccappolo opines on topics prohibited by IDRA.  The report states: ██████████

████████████████████████████████████████████████████████████████

Caccappolo Rep. at 6.  IDRA was enacted precisely to preclude this type of testimony regarding diminished capacity and the ultimate question of the formation of *mens rea*.  *See Jones*, 2018 WL 1115778, at *4 (noting that IDRA precludes "[e]vidence that a defendant lacks the capacity to form *mens rea*," and expert testimony on "ultimate legal issues," *id*. (cleaned up)); *see also Dupre*, 339 F. Supp. 2d at 537–38.[2]

Even if Dr. Caccappolo's testimony addressed topics permitted by IDRA, the testimony would still be inadmissible.  The bulk of Dr. Caccappolo's report is focused ██████████████



*See, e.g.*, Caccappolo Rep. at 6██████████████████████████████

████████████████████; *see also id*. at 1 (noting that Dr. Caccappolo ██████████████████████████████).  Dr. Caccappolo's analysis of Mr. Davis's mental status at the time of the alleged acts is based primarily on ██████████████████████████████ ████████████ *Id*. at 6.

Dr. Caccappolo points to ██████████████████████ ██████████████████████ but she does not specify whether she was able to determine that ██████████████████████████ ████████████████████ *Id*.  Nor does she, for example, base her clinical diagnosis on a review of medical records regarding events that predated the alleged

---

[2]     The Government also seeks to preclude Dr. Caccappolo's testimony on several other grounds, including lack of adequate notice pursuant to Federal Rules of Criminal Procedure 12 and 16.  *See* Gov. MIL, Dkt. 903 at 18. In light of the Court's holding that Dr. Caccappolo's testimony is precluded by IDRA, the Court does not address the Government's remaining arguments.  The Court notes, however, that any prejudice stemming from the timing of defense counsel's notice has been alleviated by the subsequent six-month adjournment of trial.  That said, the Court agrees with the Government that, in terms of specificity, Dr. Caccappolo's report leaves much to be desired.

criminal activity.  *See Childress*, 58 F.3d at 729 (noting that a defendant's medical history may be used to evaluate whether he possessed the required *mens rea*); *Jones*, 2018 WL 1115778, at *7 (admitting psychological testimony based on the effect of defendant's history of abuse on his *mens rea*).

While Dr. Caccappolo briefly notes that Mr. Davis suffered head trauma in 2009 and 2010, she based that conclusion on an ESPN article and does not include any medical evaluation of the impact of those injuries beyond the conclusory statement that ████████████ ████████████████████  Caccappolo Rep. at 6; *see also id*. at 3.  To the extent that the report may be construed as reflecting her opinion that Mr. Davis ████████████████████ ██████████████████████, she does not explain her methodology so that the Court could determine its reliability and whether she reliably applied the methodology to the facts to reach her conclusion that Davis did not act with a culpable *mens rea*.  *See* Fed. R. Evid. 702.

A core requirement for expert testimony under Rule 702 is that the opinion offered is based on sufficient facts or data to support the opinion.  In this case, the report is a classic example of an opinion reached based on nothing more than the *ipse dixit* of the expert.  Dr. Caccappolo opines, for example, that Mr. Davis ████████████████████████████ ████████████████████████  "as [the Indictment] was explained to" her. Caccappolo Rep. at 7.  She further opines that ██████████████████████████ ███████  *Id*.

Nowhere in the report, however, does she lay out her understanding of the mental elements of the charged offenses or explain why, given ████████████████████, he did not have the required *mens rea*.  By way of example, she does not explain ████████ ████████████████████████████████████████████████

██████████████ , ████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████ .

In short, because her report does not connect her data to her opinion except by way of *ipse dixit*, does not "focus[] on the defendant's specific state of mind at the time the offense was committed," and does not otherwise comply with Federal Rule of Evidence 702, Dr. Caccappolo's testimony is inadmissible. *Jones*, 2018 WL 1115778, at *11 (quoting *United States v. Westcott*, 83 F.3d 1354, 1358 (11th Cir. 1996)).

## II.    The Court Denies Dr. Washington's Motion for Severance

Dr. Washington seeks to sever his trial from the Player Defendants' trial.[3]  He argues that joinder is inappropriate and prejudicial because (1) there are no allegations he directly conspired with Mr. Davis or Mr. Bynum, (2) a joint trial would be too complex for the finder of fact, (3) a joint trial would improperly allow prejudicial evidence regarding bad acts committed by other

---

[3]    Dr. Washington also seeks retroactively to join the pretrial motions previously filed in this matter. Washington Mem., Dkt. 897 at 18.  The Government does not oppose that request.  Gov. Opp., Dkt. 931 at 1.  The Court grants Dr. Washington's motion to join the previously filed pretrial motions *nunc pro tunc* and denies those motions for all the reasons previously set forth in the Court's Opinion at Dkt. 726.

Dr. Washington also moved for a limited bill of particulars, which the Government represented it would provide.  *See* Washington Mem. at 14; Gov. Opp., Dkt. 931 at 1.  The Government represents that Dr. Washington has agreed to hold his motion for a limited bill of particulars in abeyance, and Dr. Washington did not dispute that representation.  Gov. Opp. at 1.  Accordingly, the Court denies the motion for a limited bill of particulars without prejudice if the parties' informal efforts at resolution are unsuccessful.

healthcare providers to be admitted, and (4) his contemplated defenses are inconsistent with the

Player Defendants' defenses.[4]  Washington Mem., Dkt. 897 at 16–17.

### A.  Legal Standard

Joinder of defendants is governed by Federal Rule of Criminal Procedure 8(b), which

provides:

> The indictment . . . may charge 2 or more defendants if they are alleged to
> have participated in the same act or transaction, or in the same series of
> acts or transactions, constituting an offense or offenses.  The defendants
> may be charged in one or more counts together or separately.  All
> defendants need not be charged in each count.

"[J]oinder is proper where two or more persons' criminal acts are unified by some substantial

identity of facts or participants, or arise out of a common plan or scheme."  *United States v.*

*Cervone*, 907 F.2d 332, 341 (2d Cir. 1990) (internal quotation omitted).  Even when a defendant

is properly joined, however, Rule 14(a) permits him to seek severance for trial if joinder is

prejudicial pursuant to Federal Rule of Civil Procedure 14(a).  "Whether to grant or deny a

severance motion is 'committed to the sound discretion of the trial judge.'"  *United States v.*

*Salameh*, 152 F.3d 88, 115 (2d Cir. 1998) (internal quotation omitted).

The Supreme Court has further emphasized that "[t]here is a preference in the federal

system for joint trials of defendants who are indicted together."  *Zafiro v. United States*, 506 U.S.

534, 537 (1993).  "This preference is particularly strong where . . . the defendants are alleged to

have participated in a common plan or scheme."  *Salameh*, 152 F.3d at 115.  The rationale, at

least in part, for this preference is that:

> [i]t would impair both the efficiency and the fairness of the
> criminal justice system to require, in all these cases of joint crimes

---

[4]     Dr. Washington also seeks to sever his trial due to the late change of counsel and argues that defense
counsel would not be able effectively to prepare in advance of the previously scheduled May 15, 2023, trial date.
*See* Washington Mem. at 9.  In light of the subsequent six-month adjournment, however, the Court finds that Dr.
Washington's counsel has had adequate time to prepare.

> where incriminating statements exist, that prosecutors bring
> separate proceedings, presenting the same evidence again and
> again, requiring victims and witnesses to repeat the inconvenience
> (and sometimes trauma) of testifying, and randomly favoring the
> last-tried defendants who have the advantage of knowing the
> prosecution's case beforehand.

*Richardson v. Marsh*, 481 U.S. 200, 210 (1987).

Given this presumption, a "district court should grant a severance motion only if there is

a serious risk that a joint trial would compromise a specific trial right of the moving defendant or

prevent the jury from making a reliable judgment about guilt or innocence." *United States v.

Rosa*, 11 F.3d 315, 341 (2d Cir. 1993) (citing *Zafiro*, 506 U.S. at 539).  "[D]efendants are not

entitled to severance merely because they may have a better chance of acquittal in separate

trials." *Zafiro*, 506 U.S. at 540 (citations omitted).  Nor does "the fact that evidence may be

admissible against one defendant but not another . . . necessarily require a severance." *United

States v. Rittweger,* 524 F.3d 171, 179 (2d Cir. 2008) (internal quotation omitted).  These

concerns are often adequately resolved through the use of limiting instructions.  *See United

States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003) (citing *Zafiro*, 506 U.S. at 539) ("[L]ess

drastic measures — such as limiting instructions — often suffice as an alternative to granting a

Rule 14 severance motion.").

## B.  Severance Is Not Warranted

Dr. Washington has not met his "heavy burden" of demonstrating that joining his trial

with the Player Defendants would result in "substantial prejudice." *United States v. Page*, 657

F.3d 126, 129 (2d Cir. 2011).

First, Dr. Washington speculates that a trial involving three defendants would overly

complicate the record beyond the jury's ken.  *See* Washington Mem. at 16.  Dr. Washington does

not explain, however, what aspects of a joint trial might confuse a jury.[5]  "There is no support in caselaw or in logic for the proposition that a lengthy trial, a large number and variety of charges, and numerous defendants violate due process without a showing that the issues [are] actually beyond the jury's competence." *United States v. DiNome*, 954 F.2d 839, 842 (2d Cir. 1992).

Second, Dr. Washington argues that a joint trial would prejudice him because the jury would be exposed to evidence admissible as to the Player Defendants but otherwise inadmissible as to Dr. Washington.  *See* Washington Mem. at 16–17.  As an initial matter, the Government has accused Dr. Washington and the Player Defendants of being members of the same conspiracy; whether they were in communication with each other is irrelevant.  "The established rule is that a non-frivolous conspiracy charge is sufficient to support joinder . . . ." *United States v. Nerlinger*, 862 F.2d 967, 973 (2d Cir. 1988) (collecting cases).  Furthermore, because Dr. Washington is accused of being a member of the same conspiracy as the Player Defendants, "all the evidence admitted to prove that conspiracy, even evidence relating to acts committed by co-defendants, is admissible against [him]." *United States v. Salameh*, 152 F.3d 88, 111 (2d Cir. 1998) (citation omitted).  And even if it were not, the fact that the jury may hear evidence that would be otherwise inadmissible in a trial of a single defendant does not, by itself, warrant severance.  *See Rittweger,* 524 F.3d at 179.

---

[5]      *United States v. Branker*, 395 F.2d 881 (2d Cir. 1968), on which Dr. Washington relies, is wholly inapposite.  *See* Washington Mem. at 16.  The *Branker* court emphasized that the unique circumstances of that case, including the dismissal of the conspiracy count that was used to justify joinder, warranted a severance.  *See id.* at 887–88.  In contrast, Dr. Washington and the Player Defendants are charged with participating in a single conspiracy to commit health care and wire fraud and a conspiracy to make false statements related to health care matters.  Superseding Indictment (S9), Dkt. 927 ¶¶ 1, 72.  Furthermore, *Branker* involved eight defendants charged in eighty counts; trial in this matter will involve, at most, three defendants charged in six counts.  *See Branker*, 395 F.2d at 887.

Similarly, *United States v. DiNome*, 954 F.2d 839 (2d Cir. 1992), involved facts far removed from the present case.  The conspiracy charge in that case was dismissed before trial, rendering "all but an infinitesimal fraction of the evidence at the sixteen-month trial" irrelevant as to certain defendants.  *Id.* at 844.

Finally, Dr. Washington points to "the apparent inconsistency in the defenses" that Dr. Washington and the Player Defendants will mount. Washington Mem. at 17. Dr. Washington suggests that the Player Defendants will argue that they are not culpable because they innocently relied on Terrence Williams and other healthcare providers who have pled guilty. *See id*. Dr. Washington, in turn, intends to argue that he never intended to join the conspiracy led by Terrence Williams. *See id*.

Anticipated inconsistencies in defenses, however, are not enough to demonstrate a "serious risk" that joinder would violate "a specific trial right of the moving defendant or prevent the jury from making a reliable judgment about guilt or innocence." *Rosa*, 11 F.3d at 341 (citation omitted); *see also United States v. Percoco*, No. 16-CR-776, 2017 WL 6314146, at *14 (S.D.N.Y. Dec. 11, 2017) (denying motion to sever trials based, *inter alia*, on defendants' arguments that their "defenses could conflict," *id*. at *12). Dr. Washington does not argue, as he must to succeed on an inconsistent-defenses argument, that if the jury were to accept the Player Defendants' defense, it would necessarily convict him. *See United States v. Yousef*, 327 F.3d 56, 151 (2d Cir. 2003) (noting that conflicts in defense strategies only merit severance if they are "mutually antagonistic" such that "accepting one defense requires that the jury must of necessity convict a second defendant," *id*. (cleaned up)). As presented by Dr. Washington, the anticipated defenses are complementary rather than antagonistic: everyone wants to point the finger at Terrence Williams and argue that he is the bad actor.

Finally, considerations of judicial economy counsel in favor of joinder. Proof of the charges will involve overlapping evidence as to facts and participants, and severance would require the Court to preside over duplicative trials and force witnesses to testify twice. *See* Gov. Opp., Dkt. 931 at 5 (listing evidence and witnesses common to the Player Defendants and Dr.

Washington).  The Court is confident that it can properly instruct the jury as to each Defendant's respective charges and give limiting instructions when necessary to eliminate the risk of unfair prejudice from evidence admitted against some but not all Defendants.  Dr. Washington is free to seek appropriate limiting instruction if such evidence is admitted.

### III.    Evidence of the Player Defendants' Additional Submissions Is Admissible

The Government seeks to introduce, pursuant to Rule 404(b), evidence that Mr. Bynum[6] and Mr. Davis each submitted false invoices for medical services that have not been charged; the Player Defendants cross-move to exclude this evidence.[7]  *See* Gov. MIL at 9; Davis MIL, Dkt. 917 at 1; Bynum MIL, Dkt. 894 at 1.  Rule 404(b) sets forth several purposes for which evidence of other acts may properly be admitted, including motive, knowledge, and "absence of mistake or accident."  Courts may also admit other act evidence for any "non-propensity purpose, including state of mind," so long as it is relevant, the evidence's probative value substantially outweighs the risk of unfair prejudice, and the court gives an appropriate limiting instruction.

---

[6]    Mr. Bynum further argues that the other act evidence is inadmissible because the Government failed adequately to provide notice as required by Rule 404(b)(3).  The written notice identified the specific acts the Government seeks to admit as well as the purposes for which they will seek to do so.  *See* Bynum MIL Ex. 2, Dkt. 894.  Mr. Bynum also complains that the Government identified all of the relevant permitted purposes "without articulating a basis in support of each purpose . . . ."  Bynum MIL at 2.  The Court finds that the Government's notice, and subsequent opening brief, made clear the bases on which it sought to offer the Rule 404(b) evidence.

Mr. Bynum further argues that the notice was untimely, as the Government did not provide this notice until the Friday of Easter weekend, when motions *in limine* were due the following Monday.  Bynum MIL at 2.  The Government, in opposition, asserts that it "provided notice promptly after its ongoing investigation discovered this additional fraud . . . ."  Gov. Opp.at 12.  Courts routinely approve as timely notice provided one month or less before trial.  *See, e.g.*, *United States v. Hachamie*, 91 F. Supp. 2d 565, 577 (S.D.N.Y. 2000).  Furthermore, the Court subsequently adjourned trial by six months and set a deadline for supplemental submissions for motions *in limine*, which Mr. Bynum did not file.

[7]    Because the Government moves only to admit the evidence of other fraudulent submissions pursuant to Rule 404(b), the Court does not address Mr. Davis's argument that the additional submissions are not admissible as direct evidence of the charged crime.  *See* Davis MIL, Dkt. 917 at 3–4.  The Court notes, however, that there is considerable tension between Mr. Davis's assertion that the additional submissions were wholly independent of the charged crimes and his assertion that he lacks the mental capacity to make false submissions to the Plan.

*United States v. Curley*, 639 F.3d 50, 57 (2d Cir. 2011) (cleaned up).  The Second Circuit has adopted an inclusionary approach to Rule 404(b), especially in conspiracy cases.  *See, e.g.*, *United States v. Pascarella*, 84 F.3d 61, 69 (2d Cir. 1996); *United States v. Brennan*, 798 F.2d 581, 589 (2d Cir. 1986); *United States v. Nektalov*, 325 F. Supp. 2d 367, 371 (S.D.N.Y. 2004).

The evidence of other false submissions is relevant.  Mr. Davis argues that he was unable to form the requisite *mens rea* to make false submissions, and Mr. Bynum also disputes that he acted with the requisite intent.[8]  *See* Defs. Opp., Dkt. 926 at 29, 38.  Because Mr. Bynum and Mr. Davis each "claims that his [charged] conduct has an innocent explanation," the evidence is relevant "to prove that the defendant acted with the state of mind necessary to commit the offense charged."  *United States v. Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993) (citation omitted).  The Government may rebut these assertions in its case-in-chief with evidence that the Player Defendants independently engaged in similar fraudulent activity.[9]  *See United States v. Mills*, 895 F.2d 897, 907 (2d Cir. 1990) (holding that the Government could introduce in its case-in-chief evidence of similar, past crimes to demonstrate intent); *United States v. Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992) ("[W]here it is apparent that intent will be in dispute, evidence of prior or similar acts may be introduced during the government's case-in-chief, rather than waiting until the conclusion of the defendant's case."  *Id*. (internal quotation omitted)).

---

[8]     As further evidence that intent remains a live issue in this case, the Defendants moved to preclude the Government from referencing conscious avoidance in its opening argument, which the Government has agreed not to do.  *See* Washington Mem. at 2; Gov. Opp. at 1.  That motion is consequently denied as moot.

[9]     In their opposition, the Player Defendants argue that the Court should refrain from admitting the Rule 404(b) evidence until after all parties conclude their cases-in-chief because the Defendants have not actually disputed whether they possessed the requisite intent before the jury.  *See* Defs. Opp. at 15–16.  The Player Defendants have made clear that they dispute that they possessed the requisite intent through their motions *in limine* and discourses before the Court.  If, however, the Player Defendants choose to no longer make the intent element a materially disputed issue, they may re-raise their motion to exclude the Rule 404(b) evidence.

In short, evidence of independent, false submissions to the same entity made within months of the charged conspiracy is "sufficiently similar to the conduct at issue to permit the jury to reasonably infer" that Defendants' assertions that they lacked the requisite intent are false.[10]  *Curley*, 639 F.3d at 59 (internal quotation omitted); *see also Huddleston v. United States*, 485 U.S. 681, 690 (1988) (noting that in reviewing Rule 404(b) evidence, the court must determine "whether the jury could find the conditional fact . . . by a preponderance of the evidence," *id*. (citation omitted)).[11]

The Player Defendants' additional false submissions are also not unduly prejudicial; at bottom, they involve the same basic acts that are charged in the Indictment: the submission of false claims to the Plan.  The Player Defendants argue that the evidence of the other submissions is prejudicial because they allegedly constitute fraud independent of Terrence Williams's scheme, and rather than being portrayed as mere cogs in a wider conspiracy, the additional submissions depict them as having planned and executed the other crimes alone.  *See* Davis MIL at 5.  Even if the evidence at trial supports the Defendants' assertion that they were swept up in Terrence Williams's scheme, that would not render the additional submissions "significantly

---

[10]     Defendants incorrectly assert that Rule 404(b) requires a similarity analogous to a "signature."  *See* Davis MIL at 5.  While Rule 404(b) permits the introduction of other crimes committed through nearly identical methods to demonstrate that the defendant operates through a "unique scheme or pattern," *United States v. Benedetto*, 571 F.2d 1246, 1249 (2d Cir. 1978), courts do not require "synonymity" when evaluating the propriety of introducing other act evidence to show knowledge or motive, *United States v. Gordon*, 987 F.2d 902, 908 (2d Cir. 1993) (internal quotation omitted).  Nor do courts require that the same actors be involved in the prior crime and the charged crime; evidence of an individual conspirator's crimes may be properly admitted to demonstrate that conspirator's knowledge or intent.  *See United States v. Mitchell*, 328 F.3d 77, 82–83 (2d Cir. 2003) (defendant's prior arrest for possession of a firearm was admissible to demonstrate he knew that the charged conduct, including conspiring to deal firearms without a license and to transport firearms across state lines, was illegal).

[11]     Mr. Davis argues that the risk of undue prejudice is heightened because the additional submissions have not been proven beyond a reasonable doubt at trial, before a grand jury, or in a warrant application.  *See* Davis MIL at 6–7.  The Supreme Court has made clear, however, that courts need not make a preliminary finding that the additional submissions satisfy even a lesser preponderance of the evidence standard, only that a jury reasonably could find that the other crime was committed.  *See Huddleston v. United States*, 485 U.S. 681, 690 (1988).

more sensational and disturbing than the charged crimes." *Curley*, 639 F.3d at 62 (citation

omitted). Furthermore, applying Rule 403's balancing test, the Court finds that any "adverse

effect" on the defendants is outweighed by the highly probative value of the additional

submissions. *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980); *see also United States*

*v. Scott*, 677 F.3d 72, 83–84 (2d Cir. 2012) (noting that Rule 404(b) imports Rule 403's

balancing test). To the extent there is any unfair prejudicial effect, the Player Defendants are

free to propose limiting instructions.

Accordingly, the Government's motion to be able to introduce evidence of Mr. Bynum's

March 2019 false submissions and Mr. Davis's fall 2019 false submissions is GRANTED, and

the Player Defendants' cross-motion to exclude this evidence is DENIED.[12]

### IV.    The Defendants' Out-of-Court Statements and Co-Conspirators' Statements Are Not Inadmissible Hearsay

The Government seeks to introduce conversations involving the Defendants but does not

specify the content of these statements.[13] Gov. MIL at 14–15. The Government correctly states

that, as a general matter, a defendant's out-of-court statement related to the offense is not hearsay

---

[12]    Mr. Davis further seeks to preclude admission of the other act evidence because the Government has not yet specified whether it will seek to introduce the evidence in a manner that complies with the Federal Rules of Evidence. *See* Davis MIL at 7. In response, the Government asserts that it intends to offer "testimony of a custodial witness or two and the admission of just a few additional documents." Gov. Opp. at 14. To the extent that the other act evidence is not compliant with the Federal Rules of Evidence, Mr. Davis may object when the Government seeks to introduce the evidence.

[13]    Mr. Bynum seeks to preclude the Government from introducing evidence related to his failed plea agreement and allocution, and the Government does not object. *See* Bynum MIL at 4; *see also* Gov. Opp. at 1. Accordingly, Mr. Bynum's motion to preclude evidence related to his failed plea agreement and allocution is granted.

and may be properly admitted as a party admission.  *See* Fed. R. Evid. 801(d)(2)(A); *United States v. Russo*, 302 F.3d 37, 43 (2d Cir. 2002) (summarizing Fed. R. Evid. 801(d)(2)(A)).

The Government also seeks to admit statements made by alleged co-conspirators regarding "the logistics of the conspiracy."  Gov. MIL at 15.  The Government again correctly states the law: co-conspirator statements are not excludable as hearsay if the statement is offered against an opposing party and was made by that party's co-conspirator "during and in furtherance of the conspiracy."  Fed. R. Evid. 801(d)(2)(E).

To the extent that the statements that the Government seeks to introduce are otherwise compliant with the Federal Rules of Evidence, they will be admissible.  Accordingly, the Government's motion to admit the Defendants' out-of-court statements and co-conspirators' statements is granted, without prejudice to the Defendants arguing that specific statements are not co-conspirator hearsay or are otherwise inadmissible.

## V.     Defendants' Post-Arrest Statements Cannot be Introduced by Defendants

The Government seeks to preclude Defendants from introducing their own post-arrest statements or other out-of-court statements made by Defendants.  Gov. MIL at 17, 18 n.5.  Defendants agree that the hearsay rule generally bars them from introducing their own out-of-court statements but ask the Court to reserve its ruling for further argument in light of the fact that such statements may be otherwise admissible, including for completeness.  Defs. Opp. at 26; *see also United States v. Williams*, 930 F.3d 44, 6061 (2d Cir. 2019) (noting that post-arrest statements may be introduced for completeness).

The Government's motion is granted, without prejudice to Defendants moving to admit their post-arrest statements on a more complete record and with more specific arguments why the statements at issue are admissible.

**VI.     Evidence Regarding The Plan's Opinion on Whether It Is a Victim, Its
Failure to Detect the Scheme Sooner, and Mr. Williams's Threats and
Impersonation of Dr. Washington Are Inadmissible**

The Government seeks to preclude introduction of (1) a January 2022 statement by the

Plan's counsel that it took no position on whether it was a victim of the charged conduct, (2) any

evidence or argument that the Plan should have detected the fraud earlier, and (3) the fact that,

beginning in October 2020, Terrence Williams allegedly threatened Dr. Washington and

impersonated him.  Gov. MIL at 42–43.  The Government argues that this evidence is irrelevant

to the crimes charged.

The fact that the Plan took no position on whether it was a "victim" of the charged

conduct and did not detect the fraud earlier has no relevance to any issue of consequence and is,

therefore, not admissible.  Fed. R. Evid. 401.  As an initial matter, the Defendants' assertion that

the Plan's statement indicates that the Plan did not consider itself a victim is not accurate; the

Plan merely declined to indicate whether it believed it was a victim.  But even if the Plan

subjectively believed it was not harmed by the charged conduct, none of the charged crimes

requires that the defrauded entity feel or actually be victimized.  *See* 18 U.S.C. §§ 371, 1343,

1347(a); *United States v. Dinome*, 86 F.3d 277, 283 (2d Cir. 1996) (discussing health care fraud

and wire statutes).  Nor is the negligence of the defrauded party in failing to detect the fraud

relevant to any element of the charged crimes.  *See* 18 U.S.C. §§ 371, 1343, 1347(a); *see also*

*United States v. Thomas*, 377 F.3d 232, 243–44 (2d Cir. 2004) (collecting cases).

Dr. Washington argues that the Plan's statement should be admitted as evidence that Dr.

Washington lacked the requisite *mens rea* because he believed he was engaged in permissible

billing procedures.[14]  *See* Defs. Opp. at 37.  Dr. Washington does not, however, explain how his *mens rea* may be proved by a noncommittal statement made by the Plan's counsel after this case was commenced.

As to the evidence that Dr. Washington was extorted and impersonated, Dr. Washington argues that Terrence Williams's fraud and extortion is probative of the fact that Dr. Washington lacked the requisite *mens rea*.  Washington Mem. at 38.  Putting aside the *non sequitur* aspect of that argument, the Government represents that the evidence will show that Dr. Washington engaged in the charged conduct before Mr. Williams extorted and impersonated him.  *See* Gov. MIL at 43.  To the extent that the Government does not seek to introduce evidence regarding Dr. Washington's conduct during the period he was allegedly being threatened or impersonated by Mr. Williams, the Court finds that Mr. Williams's conduct bears no relevance to the charged crime and is, therefore, not admissible.  Accordingly, the Government's motion is granted, without prejudice to Defendants re-raising this issue if the Government seeks to introduce evidence regarding Dr. Washington's conduct during the period he was being extorted or impersonated by Mr. Williams.

**VII.    The Government May Refer to the Plan as a Health Plan or Health Care Plan**

Defendants seek an order prohibiting the Government from referring to the Plan, which provides former NBA players reimbursement for health care expenses, as a "health plan" or "health care plan."[15]  *See* Bynum MIL at 1; Davis MIL at 7.  The Plan is a health reimbursement

---

[14]    Mr. Bynum and Mr. Davis also vaguely assert that this statement is somehow "highly probative evidence that [they] acted without fraudulent intent," without any further explanation how a statement from Plan counsel made after their arrests is relevant to their intent.  Defs. Opp., Dkt. 926 at 38.

[15]    Mr. Davis also moved to preclude the Government from referring to the Plan as an "insurance plan;" the Government has represented that will not refer to the Plan as an insurance plan.  *See* Davis MIL at 7; Gov. Opp. at 20.  Accordingly, that aspect of Mr. Davis's motion is granted.

arrangement or HRA.  While Defendants are correct that HRAs only provide reimbursement for

incurred expenses, *see* Davis MIL at 8, they do so only for expenses incurred in obtaining health

care.  HRAs are commonly understood to be health plans, and the Centers for Medicare and

Medicaid Services describe HRAs as "health plans."[16]  The Court finds no meaningful difference

between "health care plan" and "health plan."  The Government will be permitted to refer to the

Plan as a "health plan" or "health care plan" at trial.

### VIII.   The Government's Motion to Exclude Evidence of Defendants' Background Information and Legitimate Submissions Is Granted Without Prejudice

The Government seeks a broad order precluding introduction of the Defendants' "family

background, health, age, or any other similar factors."[17]  Gov. MIL at 45.  District courts possess

"wide discretion concerning the admissibility of background evidence," including the

Defendants' personal characteristics.  *United States v. Blackwell*, 853 F.2d 86, 88 (2d Cir. 1988).

Such evidence is generally irrelevant to any issue of consequence and therefore

inadmissible.  *See, e.g.*, *United States v. Battaglia*, No. S9 05-CR-0774, 2008 WL 144826, at *3

(S.D.N.Y. Jan. 15, 2008) (excluding "any evidence of Defendant's family and personal status"

under Fed. R. Evid. 401); *United States v. DeJesus*, 160 F. App'x 15, 17–18 (2d Cir. 2005)

(excluding evidence of witnesses' religious beliefs under Fed. R. Evid. 403).  Background

information may be admissible in specific situations, including, for example, to demonstrate

pertinent character traits under Federal Rule of Evidence 404(a)(2)(A) or if a defendant chooses

---

[16]     *See Health Reimbursement Arrangements*, CMS.gov, available at https://www.cms.gov/CCIIO/Programs-and-Initiatives/Health-Insurance-Market-Reforms/Health-Reimbursement-Arrangements (last accessed Sept. 14, 2023) (describing HRAs as "account-based health plans").

[17]     The Government also seeks to preclude Defendants from introducing evidence regarding the sentences they may face if convicted.  Gov. MIL at 45.  Defendants do not oppose that motion, which is granted.

to testify.  *See Blackwell*, 853 F.2d at 88 (noting that basic background education, such as "education and employment" are routinely admitted).

The Government further seeks to bar Defendants from introducing evidence concerning specific instances of good conduct, including legitimate submissions to the Plan.  Gov. MIL at 44.  "As many courts have made clear, a defendant may not affirmatively try to prove his innocence by reference to specific instances of good conduct . . . ."  *United States v. Fazio*, S2 11-CR-873, 2012 WL 1203943, at *5 (S.D.N.Y. Apr. 11, 2023).  In limited circumstances, testimony regarding specific instances of a defendant's conduct is admissible, including on cross-examination of a defendant, if direct examination elicits reputation evidence.  *See id*.

Accordingly, the Government's motion to preclude evidence related to the Defendants' background information and legitimate submissions is granted, without prejudice to the Defendants making a showing that the evidence they seek to introduce is relevant and probative.

### IX.    The Government May Elicit a Witness's Knowledge of the Charged Scheme

Defendants seek to preclude any Government witness from testifying as to the witness's knowledge of the scheme "unless that knowledge was communicated" to one of the Defendants.[18]  Washington Mem. at 19.  Defendants argue *United States v. Kaplan*, 490 F.3d 110 (2d Cir. 2007), requires the Government to prove the witness's knowledge was communicated to a defendant.  Washington Mem. at 19.

*Kaplan*, however, held only that "evidence regarding the knowledge of individuals other than the defendant should be admitted only if there is some other evidence in the record —

---

[18]    Defendants also seek to preclude lay witness testimony regarding the Defendants' *mens rea*; the Government has stated that it does not plan to solicit such testimony.  *See* Washington Mem. at 19; Gov. Opp. at 15. Accordingly, that motion is denied as moot.  Defendants may re-raise the issue if the Government seeks to introduce such testimony and fails adequately to lay a foundation.

concerning, for example, the nature of the fraud or the relationship of the parties — from which to conclude that the defendant would have the same knowledge." *Kaplan*, 490 F.3d at 120.  This can include evidence that a defendant was "exposed to the same sources from which" the witness bases his testimony.  *Id*. at 121.  The Government is not, as Defendants suggest, required specifically to demonstrate that the witness's knowledge was communicated to the Defendant; circumstantial evidence regarding the parties' relationship and the fraud are sufficient.

Accordingly, the Defendants' motion is denied, without prejudice to re-raising this issue if the Government fails adequately to establish the foundation or probative value of witness testimony regarding the Defendants' state of mind.

## X.    Evidence of Good Faith

The Government seeks to preclude Defendants from introducing evidence that they held a good faith belief that they were legally entitled to the funds in their HRAs, regardless of whether they incurred a reimbursable expense.  Gov. MIL at 15.  The Government correctly notes that the Second Circuit has made clear that "a claim of right to funds obtained through a false statement is not a defense negating fraudulent intent." *United States v. Blake*, 558 F. App'x 129, 130 (2d Cir. 2014) (discussing the mail fraud statute); *see also United States v. Lauresen*, No. 98-CR-1134, 1999 WL 637237, at *4 (S.D.N.Y. Aug. 20, 1999) (noting that there is no claim of right defense to health care fraud and discussing the similarity between the mail fraud and health care fraud statutes); *United States v. Gole*, 158 F.3d 166, 168 (2d Cir. 1998) (holding that there is no claim of right defense to wire fraud charges).

That is not to say, however, that a good faith defense is unavailable.  If a defendant actually believed that he was entitled to the funds and that he could legally obtain the funds by the means he used, that is a complete defense to the specific intent element of the fraud charges. *See, e.g.*, *United States v. Avenatti*, No. 19-CR-0374, 2022 WL 457315, at *15, *15 n.21

(S.D.N.Y. Feb. 15, 2022); *Dupre*, 462 F.3d at 139 (noting that a good faith belief in the legitimacy of the scheme and the truth of the defendant's statements would constitute a complete defense to wire fraud).

While there could be evidence that a Player Defendant wrongfully understood that the money in the HRA belonged to him, the Court is unaware of any evidence that would support the argument that any Defendant believed it was permissible to submit false documentation of health care expenses in order to access such funds. Such evidence may, however, exist. The Government's motion is held in abeyance subject to a proffer by the Defendants of what they intend to prove with respect to any anticipated good faith defense.

Additionally, in its opposition brief, the Government moved to preclude Mr. Davis and Mr. Bynum from arguing that they lacked the capacity to commit the crime because "Bynum and Davis are unsophisticated." Gov. Opp. at 20. Because this motion was not raised until the Government's opposition brief, the Court will hold this motion in abeyance subject to a proffer by the Defendants of what they intend to prove as to their states of mind. The Court reiterates, however, that IDRA precludes any affirmative defense based on mental defect that is not targeted toward *mens rea*. *See* 18 U.S.C. § 17(a); *Cromitie v. United States*, No. 09-CR-558-01, 2017 WL 1389982, at *6–7 (S.D.N.Y. Apr. 7, 2017) (noting that IDRA likely precludes the admission of testimony in support of an affirmative defense based on a defendant's lack of sophistication).

### XI.    The Parties Are Ordered to Confer About a Timetable to Produce Pre-Trial Discovery

The Defendants jointly moved to compel the Government to provide to defense counsel any additional Rule 404(b) evidence,[19] the Government's witness and exhibit lists, 3500 material, and all material required to be produced by *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny.[20]  Washington Mem. at 9–13. In response, the Government stated that it would confer with defense counsel to set a pretrial schedule.  Gov. Opp. at 21–23.

Not later than **September 20, 2023**, the parties must meet and confer regarding a pretrial schedule.  The Court will address any outstanding issues at the September 22, 2023, status conference.

### CONCLUSION

For the reasons stated above:

(1) Dr. Caccappolo's testimony is excluded.

(2) Dr. Washington's motion to sever his trial is denied.

(3) Dr. Washington's motion to join the previously filed, and previously denied, pretrial motions *nunc pro tunc* is granted.

(4) Dr. Washington's motion for a limited bill of particulars is denied without prejudice.

(5) Rule 404(b) evidence of the Player Defendants' additional false submissions is admissible.

---

[19]    The Court notes that the Government appears to have complied with its disclosure obligations under Rule 404(b).  *See* Bynum MIL Ex. 2 (Government letter).  To the extent there are remaining matters to be disclosed under Rule 404(b), the parties must include that information in their joint letter.

[20]    Dr. Washington originally requested that such disclosure be made by April 17, 2023, but the subsequent six-month adjournment of trial has obviated the need for April disclosure.  Washington Mem. at 13.

(6) Defendants' motion to preclude the Government from referencing conscious avoidance in its opening argument is denied as moot.

(7) Defendants' statements and co-conspirator statements are admissible.

(8) Defendants' post-arrest statements cannot be introduced by Defendants.

(9) Mr. Bynum's motion to exclude evidence related to his failed plea allocation is granted.

(10) The Plan's statement that it takes no view on whether it is a victim is not admissible.

(11) Defendants may not introduce evidence or make any argument regarding the Plan's failure to detect the fraud earlier.

(12) Terrence Williams's alleged extortion and impersonation of Dr. Washington is not admissible to the extent that the Government does not introduce evidence of Dr. Washington's participation in the scheme during the period that he was allegedly being extorted or impersonated.

(13) The Government may refer to the Plan as a "health plan" or "health care plan," but not an "insurance plan."

(14) The Government's motion to exclude evidence of the Defendants' background or law-abiding conduct is granted without prejudice.

(15) Defendants may not introduce evidence of possible sentences or punishment.

(16) Defendants' motion to exclude lay witness testimony regarding the witnesses' knowledge of the charged scheme is denied.

(17) Defendants' motion to exclude lay witness testimony regarding the Defendants' knowledge of the scheme is denied as moot.

(18) The Government's motion to exclude evidence of a good faith defense is held in abeyance.

(19) The Government's motion to exclude evidence regarding Mr. Bynum's and Mr. Davis's lack of sophistication is held in abeyance.

(20) The parties are ordered to meet and confer regarding the Government's schedule for pretrial disclosure of witness and exhibit lists, Rule 404(b) evidence, 3500 material and Brady/Giglio material not later than **September 20, 2023**.

Not later than **September 19, 2023**, Mr. Davis must show cause why the unredacted opinion should not be filed on the public docket.

The Clerk of Court is respectfully directed to terminate the open motions at Dkts. 894, 895, 903, and 917.


**SO ORDERED.**

**Date:  September 15, 2023**
      **New York, NY**

              **VALERIE CAPRONI**
              **United States District Judge**