**MEMO ENDORSED**

May 6, 2024

**BY EFC**
Hon. Judge Valerie E. CapronThe Accused
United States District Court Judge
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/07/2024

Re: *United States v. Washington S9 21 CR 00603 (VEC)*

Honorable Judge Caproni,

**I.   In response to the court's Order under EFC. Doc. No. 1400, I wish to address the following significant concerns for the record:**

   **1.   Misinterpretation of Discovery Request, converted into a threat by the court without explanation:**

Under the court's ruling in EFC Doc. No. 1400 at 7, where Judge Valerie Caproni has seemingly misinterpreted Dr. Washington's written routine discovery request for details about Melvin Ely, as outlined in EFC Doc. No. 1398 at 14 section D[1], it is imperative that the court provide substantial evidence for its claim that such a request could potentially lead to violations of federal law. This requirement is rooted in constitutional mandates and critical Supreme Court decisions. According to Due Process Clause of the 5th and 14th Amendment ensures fair legal processes and demands clear justifications for any judicial actions that could impact an individual's liberty. Additionally, *Caperton v. A.T. Massey Coal Co*., 556 U.S. 868 (2009), reinforces the necessity for judicial impartiality, requiring that decisions impacting a party's rights be unbiased and evidence-based.

The judge's warning[2], which implies that Dr. Washington's request for identification details could lead to criminal charges or influence Dr. Washington bail status lacks substantial justification. This interpretation of the discovery request seems to have been taken out of context, either intentionally or unintentionally, misconstruing Dr. Washington's intent, which is solely to gather necessary information for Dr. Washington defense. This misinterpretation, particularly without a clear explanation or evidence demonstrating a direct link to actual risks such as witness tampering or other illicit activities, appears prejudicial and could potentially

---

[1] "The Accused seek the identification details of Melvin Ely as referenced in USAO_00478528. Full clarification of The Accused involvement and identity will aid in contextualizingThe Accused interactions and transactions within the case." See, EFC Doc. No. 1398 at 14 section D

[2] In light of Dr. Washington's request for the "identification details of Melvin Ely," who is a cooperating witness in this matter, Mot. at 14, the Court warns Dr. Washington that any attempts to discourage Mr. Ely from testifying may violate federal criminal law, see 18 U.S.C. § 1512, and may be grounds to revoke Dr. Washington's bail and detain him pending trial.

compromise the fairness of the trial. This concern is amplified by previous allegations of potential bias by the judge, as detailed in EFC Doc. No. 1349 at pages 4 to 9. The absence of a satisfactory explanation from the court for such a grave warning could be perceived as an attempt to intimidate and threaten me with imprisonment merely for exercising Dr. Washington right to discovery. A cautionary statement from the court carries weighty implications, potentially affecting critical aspects such as bail determinations, sentencing considerations, pre-sentencing investigation reports (PSI), categorizations for imprisonment, and conditions of release.

Therefore, it is incumbent upon the court to clearly explain how Dr. Washington discovery request poses a legitimate threat, as required by the principles set forth in *Caperton* and related due process mandates. Should the court fail to adequately justify its interpretation, Dr. Washington will be compelled to interpret the warning as a direct threat to his liberties for merely exercising his due process rights. Consequently, under the duress of the court's undue warning, Dr. Washington will reluctantly forgo making future discovery requests to avoid potential punitive measures.

### 2. Refusal of Trial Adjournment

Over a 20-month (639 day) period leading up to this judicial intervention, there was a notable lack of productive action in the discovery phase by the CJA attorneys, exacerbating the challenges Dr. Washington faced. The first five months Raoul Zaltzberg refused to forward discovery requests nor file any pretrial motions (ECF Doc. No. 897 at 24 section, POINT IV, "Although prior counsel apparently waived Washington's right to file pretrial motions..."), facts documented by an unrebutted affidavit (ECF Doc. No. 679 at 4) or on docket entry (ECF Doc. No. 1274 at 2 para. 1).

This prolonged period of inaction, coupled with Scott B. Tulman, 15-months of inaction, has clouded the judicial process and restricted Dr. Washington's access to crucial evidence. The denial of a bill of particulars, refusal to grant an evidentiary hearing, and withholding of 3500 material during this time complicates his defense preparation significantly. It is an indisputable fact that Dr. Washington's substantive engagement with the cumulative discovery process only began no sooner than February 21, 2024, after pro se status was granted and the CDA provided the global discovery file. This undisputed fact evidenced by the record and Dr. Washington's unrebutted affidavits underscores systemic barriers that impede his ability to prepare for trial.

On December 28, 2023, Dr. Washington was noticed by Scott B. Tulman none of his requests for discovery had been communicated to the Government, as evidenced in (ECF Doc.No. 1274 para. 3, ln 4). This failure to act on Dr. Washington's behalf, despite numerous submissions for essential discovery materials, was confirmed by attorney Tulman himself.

The letter motion filed by Scott B. Tulman on February 13, 2024 (ECF Doc. No. 1294) to Judge Valerie Caproni highlights critical issues within the discovery process over 20 months of representing Dr. Washington. It reveals that the Coordinating Discovery Attorney (CDA) holds similar discovery materials to those available to Scott B. Tulman, raising questions about the

1

thoroughness of Scott B. Tulman's use of specialized discovery tools. Unlike the CDA, Scott B. Tulman had access to procedural discovery tools.

On February 21, 2024, discovery materials were received, following a notification from CDA, Emma Greenwood, Esq., of Greenwood Law Group, PLLC, dated February 20, 2024. This communication detailed the dispatch of the discovery materials via FedEx postal service.

The difficulties in navigating a complex discovery file, acknowledged in multiple status conferences and explicitly in ECF Doc. Nos. 1305 and 1280 at 4, paragraph 4, is all but ignored by the court.

The central issue at hand questions whether the court's denial of the trial adjournment, along with assertions of sufficient time for discovery review despite Dr. Washington's contrary claims, indicates judicial bias or prejudice, thereby infringing upon his rights under the Sixth Amendment.

Under the Sixth Amendment, defendants are guaranteed a fair trial, including adequate time and facilities to prepare a defense. Furthermore, the Due Process Clause of the Fourteenth Amendment protects against decisions influenced by judicial bias or prejudice. The Supreme Court decision in *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), underscores the critical importance of judicial impartiality.

The court's insistence that Dr. Washington has had "ample time if he uses it wisely" starkly contrasts with Dr. Washington's detailed allegations of not having meaningful access to discovery documents during the 20-months he was represented. This dismissal of Dr. Washington concerns without substantial counter-evidence may suggest a prejudiced perception of Dr. Washington's diligence and accessibility to discovery materials in general.

The refusal to adjourn the trial, predicated on disputable claims about the sufficiency of the allotted time for discovery review, raises serious concerns about potential violations of Dr. Washington's constitutional rights. Following an order on March 27, 2024, allowing Dr. Washington to withdraw his plea, the court scheduled the trial to commence just 88 days later, on June 24, 2024. This rapid progression to trial overlooks significant issues of ineffective assistance of counsel, particularly concerning attorneys Scott Tulman and Mitchell Epner, who are alleged to have unauthorizedly affixed Dr. Washington's signature to a plea agreement without his consent. This plea, which Dr. Washington reportedly never read, was used alongside other coercive tactics by the attorneys to pressure acceptance. The court missed an opportunity to address these serious allegations of misconduct by the CJA attorneys when it failed to require Scott Tulman to produce the purported email evidence of Dr. Washington's consent, as the court, under EFC. Doc. No. 1339, granted an evidentiary hearing motion yet simultaneously denied the motion that could have potentially exposed the wrongful actions of Tulman and Epner. This avoidance suggests a reluctance to confront pivotal issues that are fundamental to ensuring a fair and just trial process.

3. **Denial of Bill of Particulars**

In response to the court's denial of the request for a bill of particulars, it is imperative to highlight the apparent bias in failing to recognize the failure of the informal discovery process and honor the previous court order, which stipulated that a bill of particulars would be granted if informal discovery efforts proved unsuccessful.

On April 18, 2023, the court denied Dr. Washington 's motion made by CJA attorney for a bill of particulars (See, ECF Docs. No. 1038 at 23 para. 4), which sought clarification on critical aspects of the charges against him.

Despite acknowledging the conditional agreement in EFC Doc. No. 1038 at 7 [3][3], wherein the court recognized the possibility of resorting to a bill of particulars if informal discovery proved inadequate, the court has disregarded the manifest failure of these informal discovery efforts. This failure, exacerbated by the lack of communication regarding Dr. Washington's multiple discovery requests by his CJA-appointed attorneys, has significantly hindered his ability to adequately prepare for trial.

The court's refusal to acknowledge the breakdown of the informal discovery process and its subsequent denial of the bill of particulars suggests a prejudiced perception of the defendant's plight. By ignoring the specific failures of the informal process on the record, the court appears to be biased against Dr. Washington's fundamental right to a fair trial, as guaranteed by the Sixth Amendment.

Moreover, the lack of specificity in the current indictment further compounds the bias, as it fails to articulate how the fact pattern constitutes a breach of the law. This lack of clarity not only undermines the defendant's ability to mount a comprehensive defense but also violates his constitutional rights.

The necessity for a bill of particulars is underscored by the S9 indictment's reliance on terms such as "invoices," "receipts," "claims," "debit card transactions," "loans," "swipes," and "examples" to articulate the nature and cause of the charges against Dr. Washington. Crucially, the indictment must clarify the legal distinctions and implications of these terms, especially what are considered the misrepresented material facts associated with the invoices and debit card transactions. This clarity is vital for understanding the specific nature of the alleged fraudulent activities and ensuring all parties involved have a precise comprehension of the accusations' foundations. A definitive statement from the court would ensure that Dr. Washington fully grasps the charges, thereby supporting a fair and informed defense.

Additionally, the S9 superseding indictment fails to clearly inform me of the specific laws or regulations that classify billing for services before those services are provided, or collecting payment before treatment, as unlawful. This deficiency severely limits Dr. Washington's ability

---

[3] "Dr. Washington also moved for a limited bill of particulars, which the Government represented it would provide. *See* Washington Mem. at 14; Gov. Opp., Dkt. 931 at 1. The Government represents that Dr. Washington has agreed to hold his motion for a limited bill of particulars in abeyance, and Dr. Washington did not dispute that representation. Gov. Opp. at 1. <u>Accordingly, the Court denies the motion for a limited bill of particulars without prejudice if the parties' informal efforts at resolution are unsuccessful.</u>"  See, EFC Doc. No. 1038 at 7 [3]

3

to correlate the charges with relevant legal precedents and statutes, crucial for effectively preparing and responding to these accusations in Dr. Washington defense. Moreover, without detailed information on what constitutes the misrepresented material facts in the invoices and debit card transactions, Dr. Washington's ability to challenge the prosecution's claims is significantly hindered. This lack of clarity reinforces the need for a bill of particulars to provide detailed legal grounding for the charges, facilitating thorough and adequate defense preparation.

Given the sequence of events, including Dr. Washington transition to representing myself pro se amidst complex discovery, coupled with the court granting me the right to withdraw Dr. Washington plea and proceed to trial, the court's refusal to grant a bill of particulars—despite the evident failure of the informal discovery process and a prior court order promising such relief if informal efforts failed—suggests a potential bias. This perceived bias compromises both the fairness and the integrity of the judicial process and infringes upon Dr. Washington constitutional rights. Consequently, this motion contends that the court's decision is influenced by bias and requests a thorough reevaluation to ensure a fair trial for Dr. Washington.

### 4. Court's Determination Regarding Discovery Materials

The court's decision to construe Dr. Washington's Motion to Compel Discovery as a bill of particulars, rather than recognizing them as specific discovery requests for essential evidence, highlights a significant misunderstanding and potential oversight in judicial interpretation. This mischaracterization is critical, especially when considering the court's own directives in previous orders, which obliged Dr. Washington to specify the necessary discovery material by a certain deadline. Particularly, the court's order from April 9, 2024 (See, EFC Doc. No. 1375), which mandated the submission of specified discovery items by April 19, 2024, undermining FRCrimP 16 allowing the defense to meet and confer with the Government regarding disclosures. This further underscores a distinct contradiction when the court later denies the motion it construed to be a bill of particulars, effectively truncating the intended scope of discovery.

Dr. Washington's requests for specific discovery items were not only reasonable but necessary under the circumstances described, aiming to clarify critical aspects of the case that directly affect his defense strategy. The court's failure to differentiate between a genuine Motion to Compel Discovery and a request for a bill of particulars, especially after the failure of informal discovery processes, raises concerns about potential judicial bias or at least a prejudicial oversight. This issue merits serious consideration and rectification to ensure that the rights to a fair trial and effective defense, as guaranteed under the Constitution, are not compromised.

I fundamentally disagree with the court's determination that Dr. Washington either possess the discovery materials[4], am not entitled to them, or that they are irrelevant to the Dr. Washington

---

[4] ... the Court is confident that the Defendant has already been provided with records showing all charges made by Wellness Office-1 to the Plan debit cards that were issued to Melvin Ely and Milton Palacio, see Mot. at 8, all WhatsApp messages the Government possesses among Messrs. Washington, Williams, Ely, Miles and Palacio, see, e.g., id. at 10, 11, 17, 19, and all pertinent audio recordings of calls to Pro-Flex, id. at 3." See, EFC Doc. No. 1400 at 4.

4

case. This decision by the court was made without thorough investigation, jeopardizing Dr. Washington liberty without due process.

I do not waive or consent to the judge's biased narrative, which Dr. Washington perceived it as a retaliatory attack on Dr. Washington rights. This order fails to recognize the essential nature of comprehensive discovery for ensuring a fair trial, disregarding Dr. Washington's fundamental right to access crucial evidence for Dr. Washington's defense. It is crucial to contest such arbitrary rulings to uphold the integrity of the legal process. Regarding the Jencks Act and 3500 Material (EFC Doc. No. 1404-1 at 3 [6E], Appendix A), the government withholds text messages, potential *Brady* material claiming they fall under 3500 material without providing explanations of how it is defined under 3500 material. And regarding the known unresolved *Brady* material first raised by the courts Order and Opinion under EFC. Doc. No. 1038 at 18 which states in pertinent part:

> *As to the evidence that Dr. Washington was extorted and impersonated, Dr. Washington argues that Terrence Williams's fraud and extortion is probative of the fact that Dr. Washington lacked the requisite mens rea. Washington Mem. at 38. Putting aside the non sequitur aspect of that argument, the Government represents that the evidence will show that Dr. Washington engaged in the charged conduct before Mr. Williams extorted and impersonated him. See Gov. MIL at 43. To the extent that the Government does not seek to introduce evidence regarding Dr. Washington's conduct during the period he was allegedly being threatened or impersonated by Mr. Williams, the Court finds that Mr. Williams's conduct bears no relevance to the charged crime and is, therefore, not admissible. Accordingly, the Government's motion is granted, without prejudice to Defendants re-raising this issue if the Government seeks to introduce evidence regarding Dr. Washington's conduct during the period he was being extorted or impersonated by Mr. Williams.*

and raised again under EFC. Doc. No. 1315 at 6 para V. To date, the defense has been unable to locate any evidence in the discovery provided by the Government that pertains to Terrence Williams impersonating Dr. Washington, as mentioned by the court. The court has asserted that such evidence has been made available to the defense. However, no such evidence of impersonation has been received by Dr. Washington. The absence of clear, accessible evidence despite the court's assertions complicates the defense's ability to fully address these claims. Without specific and tangible evidence, the fulfillment of these discovery requests remains incomplete and inadequate.

The actions taken by the court as detailed in EFC Doc. No. 1400 is at odds with its earlier acknowledgment in EFC Doc. No. 134 regarding the complexity of discovery in this case. In EFC Doc. No. 1400, the court's decisions to restrict access to essential discovery materials not only contradict its prior recognition of the inherent complexities involved but also exhibit a bias that interferes with Dr. Washington ability as a pro se defendant to effectively manage and engage with the discovery process.

This contradiction is particularly concerning as it undermines the equitable administration of justice by preventing me from accessing and utilizing crucial evidence necessary for a comprehensive defense. Such actions by the court restrict Dr. Washington's ability to fully explore and challenge the prosecution's case, thereby impeding Dr. Washington's right to a fair trial.

### 5. Inconsistency in Denial of Motion to Compel Disclosure of Witness Identities

The court's rationale for denying Dr. Washington's motion to compel the disclosure of the identities of government witnesses exhibits notable contradictions:

Initially, the court invokes Rule 16, stating it does not require the government to disclose witness identities. Yet, it subsequently references United States v. Turkish, a precedent where the court exercised its discretion to mandate such disclosure. This juxtaposition suggests an inconsistent application of legal precedents, creating a confusing legal standard.

Moreover, while acknowledging that Dr. Washington is aware of some witness names, including co-defendants, the court disregards the necessity for disclosing additional witness identities. This includes potentially crucial figures like an unnamed Assistant District Attorney and a Private Investigator, whose involvement in the case may be significant. The court's failure to elucidate why the identities of these individuals are considered irrelevant or unnecessary obscures the transparency required for a fair defense.

Additionally, the court's reliance on *United States v. Lopez,* which itself cites Turkish, does not convincingly justify the denial of the motion. Given that each legal case is distinct, applying a general precedent without accounting for the unique aspects of Dr. Washington's situation may compromise the principles of fair and impartial adjudication.

Consequently, the court's refusal to disclose additional witness identities lacks robust legal reasoning and insufficiently addresses their potential relevance under Federal Rule of Evidence 404(b) for Dr. Washington's defense. This oversight neglects the importance of transparency and fairness in the trial process and may adversely impact Dr. Washington's ability to prepare a thorough defense.

II. **In response to the Government's submission pursuant to the Court's order under EFC. Doc. No. 1407 dated April 29, 2024, I, the defendant in this action, intend to address substantial concerns outlined here.**

6. **Discovery Compliance and AEO Material Management:** The Government's assertion of compliance with Federal Rule of Criminal Procedure 16 and Brady obligations warrants scrutiny. Dr. Washington harbors concerns regarding the completeness of the discovery provided and the handling of AEO materials. These materials, restricted from full defendant access, could impede Dr. Washington ability to thoroughly review pertinent evidence. Additionally, the Government's proposal to downgrade certain AEO materials to "Highly

6

Confidential" under the existing Protective Order raises questions about broader access to crucial evidence, particularly concerning its relevance to Dr. Washington defense.

7. **Redactions and Relevance:** Addressing the Government's procedures for redacting personal identifiable information (PII) and sensitive medical information is imperative. Ensuring that redactions do not obscure material facts or evidence crucial to the defense is paramount. Broader access to AEO materials is necessary, given their potential relevance to Dr. Washington defense.

8. **Allegations Involving Terrence Williams:** In August 2022, the government explicitly detailed instances where Terrence Williams engaged in deceptive practices by using an email account to threaten and impersonate a co-defendant, leading to the extortion of approximately $346,000 through threats connected to fraudulent invoices. This context highlights Williams's capacity for deception and manipulation, which is directly relevant to the charges against Dr. Washington. However, as of April 2024, there appears to be a conspicuous absence of any reference to Williams's deceptive actions towards Dr. Washington in the government's current case presentation. Given this background, the government's decision not to introduce evidence of Williams's prior acts of deception during the period he was allegedly threatening and impersonating Dr. Washington is concerning and requires deeper scrutiny. This evidence is crucial to Dr. Washington defense as it pertains directly to Dr. Washington state of mind and the circumstances under which the alleged offenses occurred. Understanding Williams's modus operandi and his interactions with me during the specified timeframe is essential to evaluate the nature of the alleged fraudulent activities and to accurately assess Dr. Washington culpability. Thus, I request that the government disclose all evidence related to Williams's interactions with me, including any communications or threats that could illuminate the extent of his influence <u>and deception</u>. This is vital for a comprehensive defense strategy that accurately reflects the contextual pressures and psychological impact of Williams's actions on Dr. Washington decision-making during the time of the alleged offenses.

9. **Brady Material under USAO_00480409:** Brady Material under USAO_00480409, as supported by the affidavit of Special Agent Michael Coughlin of the Federal Bureau of Investigation, raises substantial concerns about the withholding of potentially exculpatory evidence. Based on this affidavit, it is reasonable to believe that the prosecution was, or should have been, aware of the possibility that Paris Ramsay or Olivia Marshall may have impersonated Jennifer Smith in interactions with Dr. Washington. The failure of the prosecution to disclose such evidence, which could significantly influence the outcome of the case by demonstrating deception against Dr. Washington, suggests a breach of the obligation to provide all materially exculpatory information as mandated by *Brady v. Maryland*. This oversight necessitates urgent rectification to ensure a fair trial.

7

10. **Fairness of Discovery Process:** Your concerns about the fairness of the discovery process, as outlined in the provided document, are substantial. The burdens placed on the defendant in proving the absence or presence of specific pieces of evidence within a large volume of material are concerning. Here are additional key points to consider in addressing these concerns:

    A. **Doctrine of Completeness (Request 3A):** Under Federal Rule of Evidence 106, known as the doctrine of completeness, the Government must provide not only the invoices but also the claim it supports and all other documentation that accompanied the submissions in question. This ensures fairness in considering all relevant materials together.

    B. **Specification of Evidence Location:** It is crucial for the government to specify where evidence is located within discovery materials, especially when dealing with a substantial volume like 400 GB. Lack of specificity can impose an undue burden on the defense, contrary to principles of fairness and efficient administration of justice.

    C. **Jencks Act and 3500 Material (Request 6E, 25A, 25B, 25C, 26A):** The government withholds the witness list and text messages, claiming they are 3500 material without explanations of how it is defined under 3500 material. Without clear definitions, these requests cannot be considered fulfilled.

    D. **Burden of Proof:** The burden should not fall on the defendant to prove that certain items are not within the provided discovery. The government should provide precise, navigable citations to where those items can be found within the discovery materials if they claim they have been produced. Without such citations, the burden of proof unfairly shifts to the defendant.

    E. **Missing Evidence (Requests 4A, 4B, 4D, 8A, 8B, 8C, 15, 19, 21, 23C, 30, 32A):** Several requested items, such as claims forms, kickbacks evidence, WhatsApp messages, and other documents, have not been found or provided. Claiming that the evidence has been provided without specifying its location unfairly burdens the defendant with proving that it is not located within the extensive volume of discovery materials provided. This lack of transparency undermines the fairness of the discovery process.

This letter motion sets the stage for a comprehensive response to the Government's recent filing. It underscores the necessity for meticulous scrutiny of the discovery process and evidentiary decisions. Dr. Washington's response will rigorously contest the Government's assertions and seek judicial intervention where necessary to safeguard Dr. Washington's right to a fair trial.

/s/ William J. Washington
**William J. Washington. MD,** Pro Se
williamwashington.prose@gmail.com

8

All material previously marked "attorneys' eyes only" is re-designated as "highly confidential" material. Because the Defendant did not raise objections specific to the Government's proposal to make the material available for inspection and review at the local FBI office, Dr. Washington must coordinate with the Government to do so. The Government is ordered to promptly make the material available for Dr. Washington's review at the FBI Office in Seattle.

The Court finds that the Government has satisfied its discovery obligations. Because Dr. Washington has access to all of the discovery material to which he is entitled to at this stage, the balance of Dr. Washington's motion to compel is DENIED for the reasons set forth in the Court's April 23, 2024, Order. Dkt. 1400. To the extent that Dr. Washington's complaints about his perception that the Undersigned is biased are intended to be a motion for the Undersigned's recusal, that motion is denied for the reasons set forth in the Court's April 4, 2024, Order. Dkt. 1368.

As to Dr. Washington's renewed, more detailed request for a bill of particulars, "[a] bill of particulars is not meant to be a tool to compel disclosure of the Government's case before trial." *United States v. Fruchter*, 104 F. Supp. 2d 289, 311 (S.D.N.Y. 2000) (citations omitted). The Superseding Indictment (S9) advises Dr. Washington of the federal statutes that he is accused of violating; the Government is not required to provide Dr. Washington a more detailed analysis of any applicable rules or regulations or "detailed information on what constitutes the misrepresented material facts." Reply at 5.

Dr. Washington again makes sweeping claims that he does not have discovery materials without specifying the materials to which he is entitled to have access at this time but does not. As the Court has repeatedly reminded Dr. Washington, the Court will not entertain such fishing expeditions. Moreover, the Government has provided specific citations to numerous pieces of evidence that he requested in the detailed appendix to its response. Gov. Opp., Dkt. 1404. Thus, while Dr. Washington asserts that he does not have access to the Government's evidence concerning the relationship and communications between Dr. Washington and Terrence Williams, the Government has confirmed that it has produced that information. Gov. Opp. Ex. 1, Dkt. 1404 at 2 (Request 5A).

The Court reminds Dr. Washington, again, that he is not entitled to 3500 material or the Government's witness list at this time. As to the messages that the Government claims constitute 3500 material, *see id.* at 3-4 (Request 6E), the Government is ordered to file a letter explaining why these messages constitute 3500 material by **May 9, 2024**.

Finally, the Court notes that Dr. Washington's complaints about former defense counsel are irrelevant. Dr. Washington has been fully in charge of his defense since February 7, 2024, when he elected to proceed *pro se*. In finding that Dr. Washington has adequate time to prepare for trial, the Court is considering the time that has elapsed since he took over the defense of his case, and specifically, the time that has elapsed since the Court granted his motion to withdraw his guilty plea on March 27, 2024.

The Clerk of Court is respectfully directed to terminate the open motions at Dkt. 1398 and 1430.

SO ORDERED.

05/07/2024

*Valerie Caproni* (signature)

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE