July 15, 2024

<u>BY EFC</u>
Hon. Judge Valerie E. Capron
United States District Court Judge
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

Re: **United States v. William James Washington**
**Case No. 21 Cr. 00603 (VEC)**

Dear Judge Caproni,

This case highlights significant due process violations, compounded by uncertainties surrounding the integrity of the evidence. The government relied on potentially fabricated evidence and contradictory witness testimony from Jennifer Green and Jennifer Moore, necessitating a re-examination of the conviction. Jennifer Green's testimony is the cornerstone of the prosecution's case, as she previously claimed to be the sole evaluator of claims and the primary individual answering phone calls related to the NBA's health plan. Her assertion that Dr. Washington made false statements to a Health Reimbursement Arrangement (HRA) is paramount evidence. This claim is bolstered by her authentication of call notes entered into the WEX Health system. However, Government Exhibit 505 introduced an excerpted and "whittled down" version of these call notes in a different format that does not match the WEX records and lacks an explanation for this discrepancy. This raises serious concerns about the authenticity and reliability of the evidence.

Additionally, the violation of the best evidence rule and suppression of exculpatory evidence, as seen in Government Exhibit 504 page 65, underscore the need for a thorough review. Furthermore, the prosecution presented text messages from August 2019 and resumed in December 2019, omitting a critical three-month period in between without explanation, which raises further doubts about the completeness and reliability of the evidence. The loss of audio files after the indictment suggests potential evidence tampering or destruction, raising serious questions about spoliation and prejudice against the defendant. This motion seeks to address these multifaceted issues and ensure justice through a new trial or acquittal.

1. **Inconsistencies in Jennifer Green's Testimony and Evidence: Grounds for a New Trial Under Rule 33**

Jennifer Green's testimony reveals key inconsistencies regarding the call notes she entered into the WEX system and relied on to support allegations against Dr. Washington. During direct examination, Green appeared to authenticate a section of Government Exhibit 504, page 65, as notes she entered immediately after calls (Washington Trial Transcript, June 25, 2024, at

266:18). These notes documented interactions with callers. Green also testified about "denial reasons" and administrative actions related to claims submitted by Melvin Ely (See, EXHIBIT A: Government Exhibit 504 page 65)

Additionally, on direct examination, the government introduced Government Exhibit 505, which Green appeared to authenticate as a copy of the call log, stating, "This is just a record of or a copy of our call log," and testified that these call notes indicated Dr. Washington made false statements to a healthcare plan (Washington Trial Transcript, June 25, 2024, at 274:3). However, the notes read into the record as Government Exhibit 504, page 65, are not consistent with the call notes read into the record moments later under Government Exhibit 505, and vice versa. Both sets of notes were read by Green as testimony.

This discrepancy suggests that Government Exhibit 505 and its source file were not created by Green or as part of the weekly exports Jennifer Moore testified about, raising (Washington Trial Transcript, June 25, 2024, at 123:12-25) questions about the authenticity and integrity of the evidence presented under Government Exhibit 505 (See, EXHIBIT B, Government Exhibit 505) Green's statement of unfamiliarity with the format of Government Exhibit 505 further complicates its authentication. In her FBI interview, Green stated that she had not seen the document in the format presented prior to the interview and that she typically entered notes into the WEX Health system almost instantly after or during a call (See, EXHIBIT C: Jennifer Green on July 23, 2020, 3511-002 Page 6 of 17). She also indicated that she was not aware of any reports run on the contact log information but noted that reports were provided to the NBA. She only began attending NBA call meetings where call log notes were sent on a weekly basis approximately two months prior to her interview. This further demonstrates why Government Exhibit 505 could not be the weekly exports Moore testified about because Green first viewed the files in that format during her July 23, 2020, interview, where she stated it was her first time seeing the call notes in this format. Additionally, Green noted the NBA meetings where call notes were sent, implying they were not in the MS Excel format.

Moreover, on June 17, 2024, the Government disclosed Government Exhibit 505 by email to the defense. This version purported to be a call log file with call notes of Dr. Washington speaking to Jennifer Green of the Proflex plan administrators and was disclosed to the defense seven days before the trial. Notably, this version contained evidence of only two calls, dated November 13, 2019, and December 13, 2019, between Jennifer Green of Proflex and Dr. Washington.

Given Green's unfamiliarity with the format of Government Exhibit 505 as highlighted in her previous statement (Jennifer Green on July 23, 2020, 3511-002 Page 6 of 17), any format other than that read under Government Exhibit 504 is not authentically attributable to Green. Moore's testimony that the prosecution created Government Exhibit 505 further casts doubt on its authenticity. The improper admission of Government Exhibit 505, without proper authentication, and its inconsistencies with authenticated records, represent significant evidentiary errors that prejudiced the defendant's case. Moore testified that the 505 version was a "whittled down" version of a bigger log reduced by the Government (Washington Trial Transcript, June 25, 2024, at 122:17). Additionally, its new evidence because of Moore pointing to a source file of 505,

which was acquired from the prosecution on June 26, 2024, at 12:04 AM in UNIX format and investigated post-trial as a result of its delayed release from the Government.

The inconsistencies and contradictions between Government Exhibits 504 and 505, coupled with Green's unreliable testimony, make it impossible for any rational juror to find Dr. Washington guilty beyond a reasonable doubt. Thus, the evidence presented is insufficient to sustain a conviction. Furthermore, the post-trial discovery of these discrepancies constitutes newly discovered evidence that could not have been discovered before or during the trial with due diligence. The prosecution's presentation of Exhibit 505, which was not properly authenticated and contradicted Green's direct testimony, suggests prosecutorial misconduct that compromised the fairness of the trial. In the interest of justice, a new trial is necessary to address these significant evidentiary and procedural errors and to ensure that Dr. Washington receives a fair trial.

Furthermore, it is pertinent to question why the prosecutor, during direct examination of Green, introduced additional call logs when her testimony explained that WEX Health is the system used to enter and manage the call notes and that they are unchangeable once entered, if not to confuse, mislead or deceive the defense, the jury or the court of what notes to rely on.

The standards for granting a new trial based on newly discovered evidence are well-established. In United States v. Agurs, 427 U.S. 97, 111 (1976), the Supreme Court held that a new trial is warranted when the newly discovered evidence creates a reasonable doubt that did not otherwise exist. Similarly, in Brady v. Maryland, 373 U.S. 83, 87 (1963), the Court ruled that the suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment. Moreover, in Napue v. Illinois, 360 U.S. 264, 269 (1959), the Court emphasized that the principle that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction is implicit in any concept of ordered liberty.

In light of these precedents, the newly discovered evidence concerning the discrepancies between Government Exhibits 504 and 505, along with the improper authentication and presentation of Exhibit 505, necessitates a new trial to ensure that justice is served.

## 2. Selective Editing of Government Ex. 505: Grounds for a New Trial Under Rule 33

Jennifer Moore's cross-examination provided critical insights into the handling of Government Exhibit 505 by the prosecution. Moore testified that the call log provided (Government Exhibit 505) was selectively "whittled down" from a larger source by the prosecution (Washington Trial Transcript, June 25, 2024, at 122:17). Despite this, the prosecution called Jennifer Green to the stand to authenticate Government Exhibit 505 in front of the jury as a "copy of our" notes the same day after Moore's testimony and cross-examination, before the defense could request and investigate the source file that evening. Moore's testimony informed the defense of the selective reduction and its manipulation of the evidence, highlighting the prosecution's questionable handling of the evidence and undermining its reliability and integrity.

There is no evidence that the call notes memorializing the alleged criminality of Dr. Washington on November 13, 2019, and December 13, 2019, originated or existed anywhere other than under Government Exhibit 505, created by the prosecution and its source file (See, EXHIBIT D: USAO 00634224 OSJ00000080Redacted.xlsx) created by Jonathan Fear, someone not associated with Pro-Flex per Moore's testimony. Moore clarified:

> Q. Who has access to these exported files within Pro-Flex?
> A. The exported files are emailed to myself and two other team members on a weekly basis.
>
> Q. Is there a specific individual or team responsible for managing these files?
> A. The software itself manages the file creation.
>
> Q. Do the names Julia, Carrie, Jonathan, or Anna ring a bell as associated with these call logs?
> A. As in were they Pro-Flex employees?
>
> Q. Or associated with the call log in any way?
> THE COURT: I'm sorry. You're letting your voice trail off at the end.
>
> Q. Or associated with the call log in any way?
> A. They were not recipients of the call log.
>
> Q. Are these call logs shared within Pro-Flex?
> A. The call logs are distributed by an automated email to several Pro-Flex employees on a weekly basis every Monday morning.
>
> Q. The names Julia, Carrie, Jonathan, or Anna, do they work within Pro-Flex?
> A. (Shaking head.)
>
> Q. You don't recognize --
> A. Say the names again.
>
> Q. Julia, Carrie, Jonathan, Anna.
> A. We have never had employees that have that as a first name, no.
>
> (Washington Trial Transcript, June 25, 2024, at 123:12 - 124:1-24)

These details indicate that Jonathan Fear, who created the source file for Government Exhibit 505, was not associated with Pro-Flex and had no role in the creation or management of the original call logs. This discrepancy raises serious concerns about the authenticity and reliability of Government Exhibit 505.

Furthermore, during direct examination, Green read into the record from Government Exhibit 504, page 65, stating: "Please submit an EOB, a written insurance certification that states that the claim was not and will not in the future be submitted to insurance and an explanation of why. Can also submit an NBA substantiation authorization request form which can be found on our web page" (Washington Trial Transcript, June 25, 2024, at 270:5-22). This direct reading conflicts with the entries in Government Exhibit 505 and its source file, which further questions the evidence's integrity.

Additionally, it is pertinent to question why the prosecutor, during direct examination of Green, introduced additional call logs when her testimony explained that WEX Health is the system used to enter and manage the call notes and that they are unchangeable once entered, if not to confuse, mislead, or deceive the defense, the jury, or the court as to what notes to rely on. What was the probative value of the government creating and/or modifying and introducing the call logs in question when WEX Health manages the call notes as they did under Government Exhibit 504 page 65?

The prosecution's selective editing to create Government Exhibit 505 constitutes misconduct and a due process violation. The credibility of the evidence is severely compromised, necessitating a new trial or acquittal. This case draws significant parallels to established precedents, underscoring the importance of preserving the integrity of evidence and ensuring fair trial practices.

The prosecutorial actions in this case also violated several Federal Rules of Evidence. Rule 403 permits the court to exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, misleading the jury, or wasting time. By selectively editing the evidence, the prosecution misled the jury and created unfair prejudice against the defendant. Rule 901(a) requires authentication or identification as a condition precedent to admissibility, satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. The manipulation of Government Exhibit 505 fails to meet the authentication requirements under Rule 901, as it does not accurately represent the original source material.

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that the suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment. Similarly, in *Giglio v. United States*, 405 U.S. 150 (1972), the Court extended the Brady rule to include evidence affecting the credibility of key witnesses. The selective editing of Government Exhibit 505, which directly impacts the credibility of both the evidence and the witnesses, clearly falls within the ambit of these landmark decisions.

Moreover, the Second Circuit has consistently emphasized the importance of disclosing exculpatory evidence. In *United States v. Triumph Capital Group, Inc*., 544 F.3d 149 (2d Cir. 2008), the court reiterated that the prosecution's duty to disclose evidence extends to information that could impeach the credibility of witnesses. The manipulation of evidence in the present case

directly contravenes this principle, as it undermines the reliability of Jennifer Green's testimony and the prosecution's overall case.

The Supreme Court in *Arizona v. Youngblood*, 488 U.S. 51 (1988), addressed the issue of evidence preservation, holding that the failure to preserve potentially useful evidence does not constitute a denial of due process unless a criminal defendant can show bad faith on the part of the police. In the current case, the selective editing and delayed disclosure of evidence suggest intentional misconduct, which rises to the level of a due process violation under Youngblood.

The foregoing issues also severely impact the credibility of the witnesses, particularly Jennifer Green and Jennifer Moore. Green's authentication of a selectively edited document, combined with Moore's testimony revealing the selective reduction, raises substantial doubts about their reliability and state of mind moving forward and previous testimonies about all things evidence related. If Green's testimony was influenced by the manipulated MS Excel evidence, it casts further doubt on the integrity of the evidence and the credibility of her statements through the trial. This lack of credibility not only affects the current case but also casts a shadow on any future testimonies they may provide, potentially impairing the prosecution's overall case integrity.

In conclusion, the prosecutorial misconduct in selectively editing Government Exhibit 505 and the resulting due process violation mandate a new trial or acquittal. The integrity of the judicial process hinges on the fair and transparent handling of evidence, as underscored by both Supreme Court and Second Circuit precedents. The compromised credibility of key witnesses further exacerbates the need for judicial intervention to ensure justice is served. The violations of the Federal Rules of Evidence, combined with the due process concerns, underscore the necessity for corrective action to uphold the principles of justice and fairness in the legal system.

### 3. <u>Discrepancies Between Government Exhibits 504 and 505: Grounds for Acquittal Under Rule 29 and a New Trial Under Rule 33</u>

The discrepancies between Government Exhibits 504 page 65 and 505 suggest that Exhibit 505 and its source file were not created by Green or Pro-Flex. According to the best evidence rule (Federal Rules of Evidence, Rule 1002), the original writing, recording, or photograph is required to prove its content unless otherwise provided by law. Government Exhibit 504, page 65, constitutes the original records created contemporaneously by Green and maintained in the WEX Health system per her testimony. Jennifer Green, on direct examination, testified:

Q. How are you familiar with the NBA Health and Welfare Benefit Plan?

A. I was the sole claims processor along with the sole answering of the phone calls that had come into the --

Q. Into Pro-Flex?

A. Yes.

(Washington Trial Transcript, June 25, 2024, at 121:21).

This testimony underscores that Green was solely responsible for processing claims and handling phone calls related to the NBA Health and Welfare Benefit Plan. Therefore, the call notes must have a chain of custody back to Jennifer Green. The prosecution has provided no evidence that the call notes, as alleged, exist in the WEX Health system per the evidence provided at trial. Green and Moore have testified that the notes were entered "during wrap-up time" (Washington Trial Transcript, June 25, 2024, at 122:21).

The introduction of Government Exhibit 505, which does not contain the same notes as Government Exhibit 504 page 65 and appears to have been created or manipulated after the fact, violates the best evidence rule. This discrepancy raises questions about the authenticity and integrity of the prosecution's evidence. The reliance on what appears to be fabricated or altered evidence constitutes prosecutorial misconduct and a due process violation as established in Brady v. Maryland, 373 U.S. 83 (1963).

Jennifer Moore testified that all Pro-Flex call recordings were "lost" in December 2022, stating, "The call recordings were lost when the system crashed in December 2022" (Washington Trial Transcript, June 25, 2024, at 120:11-22). This loss occurred after Dr. Washington was indicted. However, a call purportedly occurring on the same day between Jennifer Green and Glen Davis on November 13, 2019, was available just a few months prior during the Davis & Bynum trial (Davis and Bynum Trial Tr., 321:11-25). The prosecution has not explained why they did not collect the audio versions of the calls listed in Exhibit 505 before the loss of the recordings in December 2022. The absence of these critical call notes and audio files undermines the reliability of the prosecution's evidence.

Under Rule 29 of the Federal Rules of Criminal Procedure, the court must enter a judgment of acquittal if the evidence is insufficient to sustain a conviction. Given the discrepancies and the lack of authentic, original evidence, a Rule 29 motion for judgment of acquittal is warranted. The prosecution's reliance on what appears to be altered evidence fails to meet the standard of proof beyond a reasonable doubt.

Furthermore, Rule 33 allows for a new trial if the interest of justice so requires. The introduction of selectively edited and potentially fabricated evidence by the prosecution compromises the fairness of the trial. The discrepancies between Government Exhibits 504 and 505, combined with the loss of critical audio recordings, justify a Rule 33 motion for a new trial. The integrity of the trial process has been compromised, and the defendant's right to a fair trial has been violated.

In conclusion, the prosecution's presentation of Government Exhibit 505, which appears to be a selectively edited and potentially fabricated version of the call log, violates the best evidence rule and breaches due process. The discrepancies between Government Exhibits 504 and 505 raise serious questions about the evidence's authenticity and the prosecution's conduct. This court must ensure a fair trial and uphold the highest standards of integrity. Therefore, a Rule 29 motion for

judgment of acquittal or a Rule 33 motion for a new trial is warranted, as the prosecution's actions have tainted the case's outcome.

4. **Impact of Confidential Designation and Late Disclosure: Grounds for a New Trial Under Rule 33**

On May 22, 2024, Dr. Washington received a discovery letter from the Government. The letter included materials designated as "Confidential" and "Highly Confidential," such as records from Boeing Employees Credit Union and Proflex Logs. The Proflex Logs (USAO_00634224 - OSJ00000080Redacted) were in UNIX format and not immediately readable. These logs, created on April 22, 2020, by Jonathan Fear according to the files metadata (EXHIBIT E: Metadata analysis of the Proflex Logs and Government Exhibit 505 using Exiftool) and shown to Jennifer Green for the first time on July 23, 2020, by Special Agent Jonathan Eng, were sent to the defense nearly four years later, making their relevance unclear at the time. Due to their classification, Dr. Washington could not share these materials, complicating the defense's investigation. (See, EXHIBIT F: Discovery letter from the Government to Dr. Washington (May 22, 2024)

The classification of these call logs as "Confidential" significantly hindered the defense's ability to analyze and discuss the evidence comprehensively. It is important to question why these call logs were given such a designation, particularly when their content was crucial to the defense's ability to challenge the prosecution's narrative. The inability to share and discuss these materials freely added a layer of complexity to the defense's investigative efforts and trial preparation.

The Proflex Logs and Government Exhibit 505 appear to be manufactured evidence and not authenticated, each containing metadata that calls into question their authenticity. Using the reliable and widely accepted Exiftool software, Dr. Washington reviewed the metadata from the digital files in question. This analysis revealed that the Proflex Logs were created by Jonathan Fear on April 22, 2020, and last modified by Julia Gutierrez on May 21, 2024. Similarly, Government Exhibit 505 was last modified on June 15, 2024, just 7 days before trial. These dates indicate significant alterations to the documents shortly before they were finally disclosed to the defense.

In contrast, 505 and its source appear to have been created later, with the 2024 Version being a "whittled down" version provided shortly before trial, and the 2020 Version containing additional notes with metadata inconsistencies. These factors undermine their reliability compared to the original 2019 Version. The creation of the call log file (the 2020 Version Call Notes), which purportedly documents the November 13, 2019, and December 13, 2019 calls that Dr. Washington does not recall, was followed by a significant development. Special Agent Jonathan D. Eng presented Jennifer Green with an MS Excel spreadsheet titled "NBA Contact Log" during an interview on July 23, 2020. According to the agent's notes:

"A copy of an MS Excel file titled 'NBA Contact Log' was presented to GREEN. GREEN advised she had not seen the document in the format it was presented, prior to the interview. When taking calls from players, GREEN enters notes into WEX under a specific player's name. Generally, these notes are made almost instantly after or when a call comes in from a player. The date, time, notetaker, and notes are all documented in the system. GREEN acknowledged notes with her name in the 'AdminFirst' and 'AdminLast' columns appeared to be her notes." (Jennifer Green 3511-002 Page 6 of 17)

This introduction by Special Agent Jonathan D. Eng of the "NBA Contact Log" during Jennifer Green's interview, which she stated that she did not recognize in the presented format, suggests that she did not create this version. Considering Green's testimony that all notes were taken during or shortly after the call, this further casts doubt on the authenticity of all versions not created by Jennifer Green, created in WEX Health, and maintained in WEX Health. Absent these conditions, any note appears to lack the witness Jennifer Green's firsthand knowledge. Here, the decision to introduce Green to what "appears to be her own notes" raises questions about the purpose and credibility of the "NBA Contact Log," which implies that the presented versions may not reflect her original entries.

The defense exercised due diligence in seeking all relevant evidence related to these logs, filing a motion to compel discovery under ECF No. 1398 on April 19, 2024, which was subsequently denied under ECF No. 1400 on April 23, 2024. Despite these efforts, the defense did not receive Government Exhibit 505 until June 17, 2024, two days after the government had last modified the document on June 15, 2024, and just 7 days before trial. This late disclosure, combined with the denial of the motion to compel, significantly impeded the defense's ability to review all relevant evidence and prepare effectively.

Government Exhibit 505's metadata reviewed by using Exiftool is a reliable and authentic part of the digital file(s) evidence. It indicates that the Proflex Logs and Government Exhibit 505 were both created and modified under circumstances that raise questions about their integrity and authenticity. These documents, withheld for nearly four years, were not available during the trial despite the defense's due diligence. Their eventual disclosure, coupled with the metadata's revelations, suggests possible fabrication or manipulation, making them newly discovered evidence that could significantly impact the case's outcome.

The defense's inability to access complete call logs and chain of custody documentation during the trial demonstrates that the evidence was not available despite due diligence. The government's delay in disclosing these critical documents until after significant modifications had been made prevented the defense from adequately reviewing and addressing this crucial evidence. This late disclosure, combined with the court's denial of the motion to compel, obstructed the defense's ability to prepare effectively and impacted the fairness of the trial. The discrepancies between Government Exhibits 504 page 65 and 505, discovered only after detailed post-trial analysis, indicate that the defense was not provided with all necessary materials in advance.

The newly disclosed Exhibit 505 and the inconsistencies between Government Exhibits 504 and 505 constitute newly discovered evidence that was unavailable to the defense during the trial. This evidence is not merely cumulative but substantial and significant, as it could have changed the trial's outcome. The metadata of the documents confirms that this evidence was withheld for nearly four years, demonstrating that the defense did not have access to all relevant materials, despite exercising due diligence. Given the genuine nature of the evidence and its reliable sources, it warrants a new trial to ensure justice and due process are upheld.

5. **Misleading Testimony of Jake Tucker: Basis for a New Trial Under Rule 33**

The misleading testimony provided by Jake Tucker suggested a representative capacity that was not supported by evidence. During the trial, Tucker was portrayed as someone who had a significant role related to the Health Reimbursement Arrangement (HRA) plan, which was central to the prosecution's case. However, cross-examination revealed critical gaps in this portrayal.

First, it is essential to address the absence of any clear evidence demonstrating that Tucker held a representative capacity for the HRA. During cross-examination, it was established that Tucker did not have any formal association with the HRA, nor was he authorized to speak on its behalf. His testimony failed to provide any substantial proof of his involvement or authority concerning the HRA. This revelation significantly undermined the credibility of his statements and the prosecution's narrative.

Second, even if Tucker had some form of authority or involvement with the HRA, there was no evidence indicating that he was acting in any law enforcement capacity. Law enforcement capacity implies that the individual is officially designated to perform investigative or enforcement functions, which requires a certain level of formal recognition and responsibility. In Tucker's case, there were no records, documents, or credible testimonies confirming that he had any such official designation.

Moreover, Tucker's vague and inconsistent recollections during his testimony further cast doubt on any claims of his involvement in a law enforcement role. He testified that the purpose of his call to Dr. Washington was to learn about invoice practices, not to conduct an investigation or enforce any regulations. His inability to recall discussing the HRA, specific plan members, specific invoices, or mentioning debit card charges, or other significant details about the calls suggests that his interactions were routine and administrative at best, rather than investigative or enforcement-related.

The lack of clarity regarding Tucker's role is further emphasized in the trial transcript, where Jennifer Moore's testimony highlights that Tucker did not represent her or Pro-Flex generally:

Q: And what law enforcement was that?
A: Proskauer.
Q: Who hired Proskauer?
A: Co-counsel for the NBA NBPA.

Q: Did Proskauer represent you?
A: Not at all.
Q: Or Pro-Flex generally?
A: Not at all.

(Davis and Bynum Trial Transcript, p. 309:2-9.)

The evidence at trial did not support claims of Tucker's involvement in a representative or investigatory role related to the healthcare plan or clarify the importance of the phone call. The misleading testimony provided by Tucker was highly prejudicial and should have been excluded under FRE 403 and 702. The presence of this prejudicial testimony violated the defendant's due process rights, significantly impacting the fairness of the trial. Therefore, the defendant respectfully requests that the court grant a new trial under Rule 33 of the Federal Rules of Criminal Procedure.

## 6.  Denial of Due Process and the Necessity for a New Trial: Relief Under Rule 33

The trial against Dr. Washington was fundamentally flawed due to significant gaps in evidence that compromised the integrity of the proceedings and violated his due process rights. This case hinges on the government's presentation of evidence, which was both incomplete and unreliable, creating substantial challenges for the defense.

The government presented several text messages, specifically text messages between Dr. Washington and Terrance Williams, the alleged ringleader, from August 2019 then resumed in late December 2019, conspicuously omitting a critical three-month period from September through late December 2019. This unexplained gap in evidence raises substantial concerns about the completeness and reliability of the case against Dr. Washington. This period has critical relevance to the government's case as it is during this time period of the alleged acts such as the alleged fraudulent invoices are sent to the Plan as claims for reimbursement, it's the period of the alleged Jen Green phone calls, the Tucker phone call from 2019, and the period in which the first 3 months of debit card transactions. The defense contends that crucial communications during this missing period would have demonstrated that fake phone numbers, deceptive tactics, threats, and attempts to misinform, confuse, deceive, and often threaten Dr. Washington were orchestrated by Terrance Williams and his co-conspirators. FBI agents described Williams' conduct as criminal extortion, a characterization that underscores the importance of these missing messages in establishing the context and origin of the manipulated information. Their absence significantly impaired the defense's ability to challenge the prosecution's narrative.

Moreover, the court orders under ECF No. 1515 and ECF No. 1038 limiting Dr. Washington from revealing evidence to the jury further compounded these issues, infringing upon his due process rights. This restriction prevented Dr. Washington from presenting the full scope of evidence, including Williams' extortion and deception, which were central to his defense. Compounding the problem, there is no authenticated and reliable record of the two pivotal calls on November 13, 2019, and December 13, 2019. The audio files of these calls were reportedly "lost" after Dr. Washington was indicted. The court further restricted the alleged conspiracy

timeframe to August 2019 through July 2020, thereby precluding Dr. Washington from informing the jury about the full extent of how he was victimized and elucidating the modus operandi of Williams and his co-conspirators before and after this period.

Witnesses Jennifer Moore and Jennifer Green testified that the invoice evidence first presented to prove Dr. Washington's criminality was troubling not because of a misrepresentation of material fact, but due to what was missing from the invoice. Specifically, the lack of audio files led to the creation of call notes, and the absence of text messages during the critical months of September, October, and November 2019, when routine debit card transactions were occurring, is indicative of this issue. Furthermore, almost all of the WEX Health note records from this time period were missing, except for Government Exhibit 504 page 65. This significant lack of authenticated and reliable documentary evidence further hindered Dr. Washington's ability to mount a complete defense, highlighting the procedural deficiencies in the case.

Dr. Washington received access to discovery on February 21, 2024, but he did not have time to review it as he was tasked with preparing for a plea withdrawal motion and hearing scheduled for March 27, 2024. This task required his undivided attention. It was only after this hearing, on March 27, 2024, that Dr. Washington was able to turn his focus to investigating and preparing for a trial set for less than three months away on June 24, 2024. This court's order, giving Dr. Washington, who was proceeding pro se, less than three months to prepare for a complex trial involving voluminous discovery (ECF No. 1350), was unreasonable. This undue haste undermined his ability to prepare an adequate defense, further emphasizing the lack of fairness in the trial process.

The significance of missing evidence and its impact on the fairness of a trial is well-established in Second Circuit jurisprudence. In United States v. Agurs, 427 U.S. 97, 112 (1976), the Supreme Court held that the suppression of material evidence favorable to the accused violates due process. This principle was further reinforced by the Second Circuit in United States v. Sanchez, 912 F.2d 18 (2d Cir. 1990), where the court emphasized the necessity of presenting all relevant evidence to ensure a fair trial. The court stated, "When the government withholds evidence that is favorable to the accused, it compromises the fairness of the trial and violates due process" (p. 24).

Moreover, in United States v. Wallach, 935 F.2d 445, 456 (2d Cir. 1991), the Second Circuit underscored the importance of the integrity of evidence presented in court, noting that "the government's failure to preserve evidence that could have been favorable to the defense is a serious issue that can undermine the fairness of a trial." This case law supports the defense's argument that the unexplained omission of a three-month period of text messages, combined with the loss of critical audio files and the absence of key WEX Health note records, significantly impacts the reliability of the evidence and warrants a thorough examination to meet the standards required under Rule 29 and Rule 33 for a fair trial.

The Department of Justice's description of Williams' criminal activities on their website and the use of these facts at Williams' sentencing, while withholding them from Washington's jury, further illustrates the prejudicial impact of the incomplete presentation of evidence. The court's

order preventing Dr. Washington from presenting his full defense narrative exacerbates this issue, highlighting the need for a new trial to ensure justice and fairness. (See, EXHIBIT G: Department of Justice description of Terrance Williams' criminality aimed at Dr. Washington, DOJ website and related documents)

Given the complexity of the case and the late access to discovery, the expedited timeline was not reasonable. Dr. Washington was deprived of adequate time to prepare his defense, investigate the discovery, and subpoena necessary records. This undue haste undermined his ability to mount a fair defense, further highlighting the procedural deficiencies that necessitate a new trial to rectify these injustices. The cumulative effect of these issues demonstrates that the defense did not receive due process as intended by Congress, compromising the fairness and integrity of the trial. The modus operandi of Terrance Williams and his co-conspirators against Dr. Washington underscores the need for a comprehensive review and the necessity of ensuring that all relevant evidence is considered to uphold the principles of justice and due process..

Respectfully Submitted

/s/ William J. Washington
William J. Washington MD, Pro Se