UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
    UNITED STATES OF AMERICA

                -against-                                 21-CR-603 (VEC)

    WILLIAM WASHINGTON,                            ORDER

                            Defendant.
-------------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

On June 28, 2024, Defendant William Washington was convicted after trial of conspiracy to commit healthcare fraud and wire fraud, conspiracy to make false statements relating to healthcare matters, healthcare fraud, and wire fraud. *See* June 28, 2024, Order, Dkt. 1534. On July 15, 2024, Dr. Washington filed this motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 and a new trial pursuant to Federal Rule of Criminal Procedure 33. *See* Letter Motion ("Washington Mem."), Dkt. 1558. The motion is DENIED.

## BACKGROUND

On April 17, 2023, a grand jury returned a superseding indictment charging Washington, a Washington State-based physician, for conduct relating to a scheme to defraud the National Basketball Association ("NBA") Players' Health and Welfare Benefit Plan (the "Plan"). (S9) Superseding Indictment, Dkt. 927. Dr. Washington was brought into the scheme by Terrence Williams, a former NBA player. Trial Transcript ("Tr."), Dkts. 1543, 1545, 1547, 1549, 1551, at 156:5–158:15. Williams introduced him to two other former players, Melvin Ely and Milton Palacio, both of whom had Plan-provided health reimbursement accounts ("HRAs"). Tr. 154:2–156:7. The four agreed that Dr. Washington would submit claims to the Plan on Mr. Ely and Mr.

1

Palacio's behalf for services he did not actually provide, and then split the "reimbursement" proceeds. *Id.* 154:4–15, 157:17–158:15. Over the course of approximately six months, Dr. Washington submitted invoices for hundreds of thousands of dollars' worth of medical services he had not provided. *See* Government Exhibit ("GX") 204, 204A, 204B, 205, 205A, 501, 504.

The Superseding Indictment charged Dr. Washington with conspiracy to commit healthcare fraud and wire fraud in violation of 18 U.S.C. § 1349, conspiracy to make false statements relating to healthcare matters in violation of 18 U.S.C. § 371, healthcare fraud in violation of 18 U.S.C. §§ 1347; and wire fraud in violation of 18 U.S.C. §§ 1343. *See* (S9) Superseding Indictment at ¶¶ 68–78. At Dr. Washington's initial appearance, counsel was appointed to represent him. May 11, 2022, Minute Entry for Proceedings Before Magistrate Judge Parker, Dkt. 269.

In October 2022, Dr. Washington moved to change counsel. October 27, 2022, Letter Motion, Dkt. 623. After warning Dr. Washington that the right to counsel does not include the right to choose his counsel, the Court relieved his previously-appointed counsel and appointed a new attorney to represent him. November 23, 2022, Transcript of Proceedings Before Judge Caproni, Dkt. 679, at 2:23–3:5, 5:6–24. Nearly a year later, on the brink of trial, Dr. Washington pled guilty to Count One of the Superseding Indictment in full satisfaction of the charges, and the Court accepted his plea. September 27, 2023, Order, Dkt. 1054. Sentencing was set for February 2, 2024. *Id*.

In the leadup to sentencing, Dr. Washington submitted a series of *pro se* requests to the Court seeking discovery materials and various types of judicial relief. *See, e.g.*, January 28, 2024, Emergency Letter Motion, Dkt. 1263; February 1, 2024, Letter/Email, Dkt. 1273; February 1, 2024, Letter, Dkt. 1274. On February 6, 2024, he moved to proceed *pro se*. Motion to

Proceed *Pro Se* and for an Evidentiary Hearing, Dkt. 1280.  Following a status conference that day, the Court granted Dr. Washington's motion, finding that he had waived his right to counsel knowingly, voluntarily, and unequivocally.  February 7, 2024, Order, Dkt. 1284.  Shortly thereafter, on March 5, 2024, Dr. Washington moved to withdraw his guilty plea, and the Court granted his motion later that month.  Motion to Withdraw Guilty Plea, Dkt. 1315; March 27, 2024, Order, Dkt. 1350.

Dr. Washington's trial began on June 24, 2024.  As discussed in greater detail below, the Government presented, among other evidence, testimony of Mr. Ely (a coconspirator), the office manager of Dr. Washington's medical practice, and an attorney retained by the NBA to investigate suspected fraud by Plan participants; contemporaneous notes of calls between Dr. Washington and a Plan administrator; and text messages between Dr. Washington and Mr. Williams in which they discussed the scheme to defraud the Plan.  On June 28, 2024, the jury returned a guilty verdict on all counts.  *See* June 28, 2024, Order.

Dr. Washington filed this motion on July 15, 2024.  Citing "significant due process violations, compounded by uncertainties surrounding the integrity of the evidence," he seeks a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 and a new trial pursuant to Federal Rule of Criminal Procedure 33.  Washington Mem. at 1.

## DISCUSSION

### I. Legal Standard

Federal Rule of Criminal Procedure Rule 29(c) allows a trial court to set aside a jury's guilty verdict and enter a judgment of acquittal.  Defendants seeking relief under Rule 29 bear a "heavy burden."  *United States v. Caracappa*, 614 F.3d 30, 43 (2d Cir. 2010).  Rather than merely quibble with tactical or other errors at trial, the movant must show such grave problems with the prosecution's case that "no rational trier of fact could have found all of the elements of

3

the crime beyond a reasonable doubt." *Id*. "[C]ourts must be careful to avoid usurping the role of the jury when confronted with a motion for acquittal." *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003). Rule 29 "does not provide the trial court with an opportunity to substitute its own determination of . . . the weight of the evidence and the reasonable inferences to be drawn for that of the jury." *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999). Therefore, the Court must "review all of the evidence presented at trial in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the government." *United States v. Walker*, 191 F.3d 326, 333 (2d Cir. 1999).

Similarly, Federal Rule of Criminal Procedure Rule 33(a) allows trial courts, upon a defendant's motion, to "vacate any judgment and grant a new trial if the interest of justice so requires." This is an "extraordinary" remedy that courts must use "sparingly." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001). As in the Rule 29 context, "[i]t is the defendant who bears the burden" on a Rule 33 motion. *United States v. Sasso*, 59 F.3d 341, 350 (2d Cir. 1995). "The test [for Rule 33 relief] is whether it would be a manifest injustice to let the guilty verdict stand." *United States v. Guang*, 511 F.3d 110, 119 (2d Cir. 2007). Strategic miscalculations on the part of the Defendant do not, on their own, justify a new trial pursuant to Rule 33. *See* Fed. R. Crim. Pro. 33(b); *see also United States v. Castillo*, 14 F.3d 802, 805 (2d Cir. 1994) (claims of ineffective assistance of counsel at trial "do not present new evidence within the meaning of Rule 33").

In this case, because Defendant has premised his motion on the admission of evidence to which he did not object, he bears an even heavier burden for post-trial relief than normal. He must demonstrate that the Court's purported errors constituted plain error. *See* Fed. R. Crim. Pro. 52(b). "Plain error" review allows courts to

> correct an error not raised at trial only where the [defendant] demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*United States v. Wernick*, 691 F.3d 108, 113 (2d Cir. 2012) (quoting *United States v. Marcus*, 560 U.S. 258, 262 (2010)); *see also United States v. Young*, No. CR 17-0694, 2020 WL 33086, at *12 (D.N.M. Jan. 2, 2020) (collecting sources in which "justices, courts and treatises have concluded that [R]ule 52 binds district courts," including on motions for a new trial); *United States v. Jones*, 404 F. Supp. 529, 539 (E.D. Pa. 1975) ("In the absence of plain error, matters not called to the attention of the trial judge cannot be subsequently raised in the post trial stages of the proceeding.").

Finally, notwithstanding the immense burden Dr. Washington bears on this motion, the Court recognizes that "[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006). Therefore, the Court must "liberally construe . . . briefs submitted by *pro se* litigants" such as Dr. Washington, "reading such submissions to raise the strongest arguments they suggest." *United States v. Pilcher*, 950 F.3d 39, 44 (2d Cir. 2020).

**II.    Dr. Washington Has Failed to Articulate Any Reason to Conclude that His Conviction Was Wrongful**

A defendant seeking relief pursuant to Rules 29 or 33 must do more than merely identify deficiencies in the Government's case. Under Rule 29, the defendant must demonstrate that "the evidence that [he] committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *See United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013) (cleaned up). Similarly, "before ordering a new trial pursuant to Rule 33, a

district court must find that there is a real concern that an innocent person may have been convicted." *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009).

As discussed in Part III, *infra*, Dr. Washington's challenges to the Government's case are factually and legally unfounded. But even if his arguments were fact- or law-based, his motion would still be denied because he has not even attempted to explain how the totality of the evidence failed to support the jury's verdict or how any of the purported errors about which he complains satisfy the plain error standard.

At trial, the Government presented, among other pieces of evidence, invoices for services Dr. Washington never rendered, *see, e.g.*, GX 204A, 204B, 205A, 501, 504, testimony from Mr. Ely that he and Dr. Washington sought reimbursement for services they knew Dr. Washington would never provide, *see* Tr. 157:1–158:14, and text messages between Dr. Washington and Mr. Williams detailing their efforts to defraud the Plan, *see, e.g.*, GX 208, 223. The evidence at trial was, simply put, overwhelming, a point with which Dr. Washington's motion fails entirely to grapple. The evidence presented at trial could easily have led a reasonable juror to find all of the elements of all the crimes charged beyond a reasonable doubt; given the strength of the evidence, it would not be in the interest of justice to overturn the verdict. Accordingly, Defendants motions pursuant to Rules 29 and 33 must be denied.

### III.    Dr. Washington's Challenges to the Government's Evidence Are Baseless

In addition to failing to present any evidence or argument that would lead the Court to conclude that he is innocent, Dr. Washington's motion fails to identify any actual legal infirmities with the prosecution or the evidence that was admitted against him. At some points, Dr. Washington mischaracterizes the evidence. At other points, he complains about the admission of evidence to which he did not object. Throughout, he fails to show that the extraordinary remedies available under Rules 29 and 33 are appropriate.

### A.    GX 505 Was Properly Admitted

Much of Dr. Washington's motion challenges GX 505, a spreadsheet the Government introduced into evidence at trial to which Dr. Washington did not object. Although the Court will engage with his argument, admission of the document was not error, let alone plain error.

GX 505 is an excerpt of a larger spreadsheet maintained by the Plan administrator, Pro-Flex. The larger document, which contains notes from over 4,000 calls between NBA players and Pro-Flex administrators, was produced to Dr. Washington's attorney in October 2023. Tr. 39:19–40:15; Government's Memorandum of Law Opposing Defendant William Washington's Post-Trial Motion for a Judgment of Acquittal and a New Trial ("Govt. Mem."), Dkt. 1567, at 8. Because the complete spreadsheet documented conversations involving hundreds of players — most of whom were not involved with the scheme at issue in this case — it was designated "Highly Confidential" under the Protective Order. *Id*. That designation meant that Dr. Washington was barred from retaining a copy of the complete spreadsheet and could only review it in the presence of counsel. *See* Protective Order, Dkt. 165, ¶ 8.

In May 2024, after Dr. Washington had elected to proceed *pro se*, the Government produced to Dr. Washington another version of the spreadsheet, this one bearing the Bates stamp USAO_634224. *See* Govt. Mem. Ex. A, Dkt. 1567-1, at 1. This version was filtered to include only the entries involving Mr. Ely and Mr. Palacio, the retired NBA players with whom Dr. Washington conspired to execute the scheme. *See id.*; Reply Motion for New Trial ("Rep.") Ex. B, Dkt. 1568-2. Unlike the complete log, this excerpted version was designated "Confidential" under the Protective Order, meaning that Dr. Washington was permitted to retain a copy of it and to show it to standby counsel, investigators, experts, and potential witnesses as necessary. Protective Order ¶ 7(e).

GX 505 is an even more limited excerpt of the spreadsheet, containing just two entries reflecting calls between Dr. Washington and Jennifer Green, a Pro-Flex administrator, concerning Mr. Ely. Among other things, the notes from these calls indicated that Ms. Green found Dr. Washington "very defensive" in a call during which she requested an itemized invoice, and that she advised him that "no services were rendered on receipts provided." GX 505. The document was properly admitted as a business record. Tr. 71:3–22; Fed. R. Evid. 803(6).

Because Dr. Washington did not object to GX 505, the Court reviews his complaints about his admission for "plain error." Fed. R. Crim. Pro. 52(b). Dr. Washington's arguments about GX 505 fail to satisfy even the first requirement of plain error review (identifying an error), let alone satisfy his burden as to the remaining elements.

*First*, Dr. Washington claims that GX 505 is inconsistent with GX 504. Washington Mem. 1–3. The documents are not inconsistent,[1] but even if they were, that would affect only the persuasiveness of the document, not its admissibility.

*Second*, Dr. Washington argues that GX 505 is inauthentic because it contains only two excerpts from the call log. Washington Mem. 3–6. If there were evidence that the document was not authentic, that would clearly affect its admissibility, but there is not. Dr. Washington does not claim that the two excerpts contained in GX 505 were not contained in the larger call

---

[1] Page 65 of GX 504 shows internal records maintained by Pro-Flex for a $91,740 claim for "reimbursement" submitted on Ely's behalf. Toward the bottom of the page, there are sections titled "Denial History" and "Administrative Notes." Dr. Washington claims that Ms. Green testified that her notes from calls with players were recorded in these sections of GX 504; because GX 504 is different from the call notes in GX 505, GX 505 must be unreliable. Washington Mem. at 1–2. This is baseless. The portion of Ms. Green's testimony on which Dr. Washington relies was given before the Government showed GX 504 to her. Tr. 266:16–18, 267:18–19. When the Government presented the document to her, she testified that the "Denial History" section "shows how many times [a] claim was in our systems and how many times we denied it, along with a reason" while the "Administrative Notes" section contained "internal notes" on "what [Pro-Flex] would need" with respect to the claim. Tr. 268:13–14, 270:11–14. Ms. Green never testified that she or anyone else at Pro-Flex put call notes in either section. Thus, there is no inconsistency between GX 504 and GX 505.

log, nor that GX 505 omits context that renders the excerpts misleading. Instead, he appears to assert that the mere act of creating a document that excerpts the relevant portions of a larger document is tantamount to fabricating evidence. *See id.* at 6 ("[T]he prosecutorial misconduct in selectively editing Government Exhibit 505 . . . mandate[s] a new trial or acquittal."). This argument is ludicrous on its face, but if Dr. Washington believed it was persuasive, he could have made it to the jury based on the evidence that was admitted. Jennifer Moore, a Pro-Flex employee, explicitly testified that GX 505 was an excerpt of a larger document maintained by Pro-Flex. *See* Tr. 70:24–71:5 (Ms. Moore testifying that GX 505 was "a portion of our contact log"); Tr. 122:17–18 (Ms. Green testifying that the call log was "whittled down to the excerpt by the prosecution's office"). Dr. Washington did not argue in summation or when he testified that GX 505 was unreliable because it was excerpted from a larger document or for any other reason. Rules 29 and 33 are not available to correct tactical errors at trial.[2]

*Third*, Dr. Washington argues that the source file underlying GX 505 (USAO_634224) may not have been authentic because it was not created by Pro-Flex itself. Washington Mem. at 4. As with his other this-document-might-not-be-authentic arguments, this argument could have been made at trial and should have been made before Dr. Washington decided not to object to its admission. There is no evidence that the entries are not authentic; accordingly, Dr. Washington has not satisfied the first element of the plain error standard as to this argument either.[3]

---

[2] That is not to say that the Court believes it was a tactical error for Dr. Washington not to make this argument. To the contrary, tactically, it would have been silly to press this argument before a jury.

[3] Dr. Washington's argument hinges on the fact that Jonathan Fear and Julia Gutierrez, neither of whom is a Pro-Flex employee, are listed in the document's metadata as the creator and most recent editor, respectively. Washington Mem. at 4; Tr. 124:5–12. As established at trial, GX 505 was an excerpt of a larger document that was created by Wex, the software provider; the excerpt itself was created by the prosecutors. *See* Tr. 70:24–71:5 (Ms. Moore testifying that GX 505 was "a portion of our contact log"); Tr. 121:13–22 (Ms. Green testifying that Pro-Flex maintained its records using a software system called Wex); Tr. 122:17–18 (Ms. Green testifying that the call log was "whittled down to the excerpt by the prosecution's office"); Tr. 123:17 (Ms. Moore testifying that "[t]he

*Fourth*, Dr. Washington argues that his ability to review USAO_634224 was hindered by the fact that it was not produced until May 2024 (approximately one month before trial) and was designated "Confidential" under the Protective Order. Washington Mem. at 8–10. This account of the facts is misleading at best. With respect to the production date, it is undisputed that the complete call log — the master document from which USAO_634224 was derived — was produced to Dr. Washington's attorney in October 2023, approximately eight months before Dr. Washington's trial. Govt. Mem. at 8; Rep. at 4. Even setting that aside, it is unclear why a month was not enough time for Dr. Washington to review USAO_634224, nor what outcome-shifting arguments he would have made if he had possession of it earlier. With respect to the confidentiality designation, Dr. Washington makes no argument that the document was not, in fact, properly designated under the terms of the Protective Order. Inasmuch as the Protective Order allowed parties to retain copies of documents marked "Confidential" and to share such documents with "independent expert witnesses, investigators, or advisors retained by defense counsel in connection with this action," Dr. Washington's ability to mount a defense was not inhibited by the designation. Protective Order ¶ 7(e).

---

software itself manages the file creation"). That being the case, it is unsurprising that the metadata of the spreadsheet includes names of individuals not employed by Pro-Flex.

### B.     Jake Tucker's Testimony Was Properly Admitted

Dr. Washington also complains that Jake Tucker, an attorney at the law firm that the NBA engaged to investigate suspected irregularities with the Plan, provided misleading testimony. Washington Mem. at 10–11. This argument is charitably described as gobbledygook.[4] Mr. Tucker was a fact witness who did not purport to represent the Plan or to be a member of law enforcement. His testimony was limited to describing two conversations that were held with Dr. Washington from Mr. Tucker's office in New York City in which the Defendant described his invoices and falsely stated that Palacio and Ely were patients of his. *See* Tr. 453:18–454:5, 457:4–10 (Mr. Tucker testifying that Dr. Washington stated in these conversations that invoices from his practice reflected services he actually provided).

Dr. Washington had every opportunity to cross examine Mr. Tucker and to bring out the points he now views as pertinent. Indeed, Dr. Washington conducted a lengthy cross-examination of Mr. Tucker in which he pointed out many of the same purported deficiencies that he identifies in his motion, including that Mr. Tucker could not recall certain details about his conversations with Dr. Washington. *See* Tr. 459:4–21, 461:9–11, 463:3–464:2, 464:12–465:18. Other aspects of Mr. Tucker's testimony about which Dr. Washington now complains, such as the fact that he is not a law enforcement officer and is not authorized to speak on behalf of the Plan, were ignored altogether on cross-examination despite ample opportunity for questioning.

Dr. Washington's argument that Mr. Tucker's testimony should have been excluded pursuant to Federal Rule of Evidence 403 because of the purported weaknesses he identifies in

---

[4]     Dr. Washington complains that: Mr. Tucker's testimony "suggested a representative capacity that was not supported by evidence;" "there was no evidence indicating that [Tucker] was acting in any law enforcement capacity;" and "Tucker's vague and inconsistent recollections . . . further cast doubt on any claims of his involvement in a law enforcement role." Williams Mem. at 10–11.

his motion is absurd. Regardless of Mr. Tucker's authority to speak on behalf of the Plan, his testimony was admissible, and it was admitted entirely without objection. There was no error in its admission, let alone plain error, and none of Defendant's current complaints entitles him to relief pursuant to Rules 29 and 33. *See Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (cleaned up) ("It is a well-recognized principle of our trial system that determining the weight and credibility of [a witness's] testimony . . . . belongs to the jury.").

### C. Dr. Washington Has Provided No Other Basis for Relief Under Rule 33

Finally, Dr. Washington raises various criticisms of the Government's handling of the trial, which he claims warrant relief under Rule 33. None of them is meritorious.

*First*, Dr. Washington complains that, at trial, the Government presented text messages from August 2019 and December 2019, "conspicuously omitting a critical three-month period from September through late December 2019."[5] Washington Mem. at 11. Dr. Washington does not appear to assert — let alone provide evidence — that the text messages the Government presented were inauthentic, nor that there are any exculpatory text messages from September to December 2019 that the Government has possession of and failed to provide him. At trial, Dr. Washington cross-examined an investigative analyst from the U.S. Attorney's Office at length about the Government's extraction of the text messages, which the analyst testified was comprehensive. Tr. 554:21–571:15. Although the import of Dr. Washington's argument appears to be that the Government violated *Brady*, he has made no showing that the Government had exculpatory evidence that it did not produce. Accordingly, the gap in text messages presented at trial does not constitute a due process violation.

---

[5] While not entirely clear, Dr. Washington appears to be arguing that there was a *Brady* violation connected to the purportedly missing text messages.

*Second*, Dr. Washington claims that the Court's rulings on the parties' motions *in limine* found at Dkts. 1038 and 1515 limited his ability to reveal certain purportedly key evidence to the jury. He does not argue that the Court's evidentiary rulings were legally incorrect, but simply that they "prevented [him] from presenting the full scope of evidence." Washington Mem. at 11. Insofar as preventing the jury from hearing irrelevant or misleading evidence is the very purpose of a motion *in limine*, Dr. Washington's observation that the Court's orders did precisely that does not entitle him to a new trial.

*Third*, Dr. Washington argues that he did not have sufficient time to prepare for trial because the trial occurred only three months after he decided to proceed *pro se*. He provides no explanation for why three months was not adequate time to prepare. His argument is also belied by his own conduct. Between being permitted to proceed *pro se* and the beginning of trial, Dr. Washington wasted time that he could have more profitably spent preparing for trial by, instead, preparing and filing a myriad of frivolous motions, some of which were also sprinkled with complaints about the trial schedule. *See, e.g.*, Motion for an Evidentiary Hearing, Dkt. 1339; Motion for Disqualification of Judge Valerie E. Caproni for Cause, Dkt. 1367; Motion to Certify Order for Interlocutory Appeal, Dkt. 1369; Motion to Continue Trial, Dkt. 1371. It is unclear what more Dr. Washington believes he could have done with additional time. Moreover, Dr. Washington represented in March 2024 — a month after he was permitted to proceed *pro se* — that he was "prepared to proceed to trial immediately." Defendant's Reply to Government's Opposition to Defendant's Motion to Withdraw His Plea, Dkt. 1338, at 14. His retrospective change of heart is of no moment.

## CONCLUSION

For the foregoing reasons, Dr. Washington's motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 and a new trial pursuant to Federal Rule of Criminal Procedure 33 is DENIED.  The Clerk of the Court is respectfully directed to close the open motions at Dkts. 1558 and 1568.

The parties are reminded that sentencing is scheduled for Monday, November 25, 2024, and presentence submissions are due Monday, November 11, 2024.  The Court is unlikely to extend those dates.

**SO ORDERED.**

**Dated: October 10, 2024**
      **New York, NY**

      **VALERIE CAPRONI**
      **United States District Judge**